## The City Bank of Buffalo, N. Y., Appellant, *v.* The Easton Boot and Shoe Company.

*Sale—Chattel mortgage—Notice—Innocent purchaser—Fraud.*

A resident of New York state executed in New York a paper to a bank which was in effect a chattel mortgage of certain hides, but he did not deliver possession of the hides to the bank; then he made a contract with defendant for a future delivery of hides, receiving a payment in advance, and subsequently delivered the mortgaged hides to a railroad company to be shipped to the defendant, in fulfilment of his contract. While the goods were in transitu, the bank telegraphed defendant that it was the owner of the goods, which was the first notice that defendant had of the bank's title. *Held*, in an action of replevin by the bank, that the defendant was entitled to retain the hides.

Argued March 8, 1898. Appeal, No. 420, Jan. T., 1897, by plaintiff, from judgment of C. P. Northampton Co., June T., 1895, No. 61, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Replevin to recover a quantity of hides.

The case was tried by agreement before SCOTT, J., without a jury.

The plaintiff is a bank incorporated under the laws of the

state of New York and doing business in the city of Buffalo, New York. The defendant is a corporation incorporated under the laws of the state of Pennsylvania and doing business in the city of Easton, Pa. The plaintiff was a creditor of the firm of Moffatt Bros. of Alden, New York, in January, 1895, to the amount of about $41,000. On January 23, 1895, the firm of Moffatt Bros. executed a paper and delivered it to the plaintiff, as follows :

"BUFFALO, N. Y., January 23d, 1895.
" WAREHOUSE RECEIPT AND VOUCHER.

"Executed and delivered under the provisions of act, chap. 326, of the laws of New York, passed in 1858, and the acts amendatory thereof, passed in 1859 and 1866.

" Received in store from The City Bank at and in the building at our tannery at Alden, New York, known as 'The Hide House,' as its bailee, the following property, viz : Five thousand hides, same having been received from Jacob Dold, and known as Dold Packer Hides, and all bundled and all placed apart from all other hides in the east end of ' The Hide House,' occupying the entire space from the east wall of ' The Hide House ' west to, say three feet beyond the first sectional cross beam of said hide house, and extending across the entire width from north to south of said hide house, as found and inspected by A. J. Barnes on January 22d, 1895 ; said hides to be stamped in the usual place, thus ' C. B.,' as evidence of ownership by the City Bank, Buffalo, N. Y., to be tanned, finished and sold by us for them, whenever ordered to do so by said City Bank.

" MOFFATT BROS.

which we have this day pledged to ' The City Bank,' to be held subject to the order of said Bank endorsed hereon, and we do further agree to deliver to said Bank, from time to time, such additional collateral as may be required by it. If such additional collateral is not delivered on demand, then we agree to pay an equivalent sum in money to be applied in reduction of our indebtedness in such manner as the Bank elects.

" This pledge is made to the said Bank as collateral and continuing security for the payment to said Bank of all debts, obligations and responsibilities, joint, several and copartnership, which we now or at any time hereafter may owe or assume to the said Bank ; and for all commercial paper, promissory notes,

cheques, drafts, bills of exchange, to which we may be a party as maker, drawer, acceptor, or endorser, jointly or severally, or as member of any copartnership which may be maker, drawer, acceptor, or endorser thereof; and all loans, discounts and overdrafts to, by or for the benefit of ourselves or any firm of which we may be a member or members.

" And in case of a failure on our part to pay such indebtedness, obligations, or responsibilities, or any part thereof, when and as the same shall become due and payable, or to deliver to· said Bank such additional collateral as shall be from time to time demanded, or to pay such equivalent in money, we hereby authorize and empower the said Bank to sell the said hides or so much thereof as shall be sufficient to pay the amount of all such indebtedness, either at public or private sale, with or without notice; the proceeds of such sale to be applied in payment. of the amount then owing from us, or for which we may in any way be responsible to the said Bank, whether due or to become due, and the expenses attending the said sale; the balance (if any) to be paid to us.

"MOFFATT BROS."

On the said date, January 23, 1895, Mr. Barnes, the cashier of the bank, went to Moffatt Bros.'s tannery, at Alden, and the 5,000 hides mentioned in the paper were separated and stored in a building known as "The Hide House," and thereupon the bank, on the faith of said instrument, loaned and advanced to Moffatt Bros. $15,000.

The hides were then marked "C. B.," as evidence of the plaintiff's ownership, and upon written orders from the plaintiff, the firm of Moffatt Bros. commenced to tan the said hides. The plaintiff had no knowledge of any of the dealings between the firm of Moffatt Bros. and the defendant, but on May 24,. it learned that Moffatt Bros. had shipped a large amount of " C. B." leather to the defendant. Upon ascertaining this fact, it at once telegraphed defendant as follows :

"BUFFALO, May 24, 1895.

"To EASTON BOOT AND SHOE CO.,

"EASTON, PA.

" Hides shipped to you by Moffatt Bros. are our property;. separate them, and hold them on our order.

"CITY BANK, BUFFALO, NEW YORK."

The defendant had for a period of five or six years purchased large quantities of leather from Moffatt Bros., leather manufacturers at Buffalo, N. Y., aggregating from $75,000 to $100,000 per annum. Orders were given for the leather some months in advance and shipments made from time to time on those orders, as the leather was manufactured. At the date when the final order was given, in February, 1895, two prior orders were still partially unfilled ; namely, an order given in August, 1894, and one in October, 1894.

Moffatt Bros. did an extensive business. They shipped leather to a large number of firms all over the country, and their credit was unquestioned. There was nothing to suggest or indicate in any way to any parties dealing with them commercially that they were in the slightest degree financially weak.

A. J. Barnes, cashier of the City Bank, testified on the trial as follows :

" Q. Moffatt Bros. were doing business all this time, selling leather, were they not? A. Yes. Q. And they had control of the hide house in which these hides were deposited ? A. Yes. Q. That was connected with their tannery ? A. Yes. Q. They had other hides in the same hide house ? A. They had. Q. And other hides in the process of manufacture ? A. They had. Q. They were selling and buying leather and hides during all the time of this transaction ? A. So far as I know they were, yes."

C. M. Newton, Moffat Bros.' foreman, testified as follows :

" Q. Did you continue to ship leather to various parties all over the country? A. Yes. Q. There was no change in your methods of doing business after Mr. Barnes's visit from what it had been before? A. None at all. Q. You never saw any orders from the City Bank of Buffalo ? A. No, sir. Q. You never received any orders from them? A. No, sir. Q. You never saw any of the officials of the City Bank of Buffalo, there? A. No, sir. Q. You never received any instructions from them of any character? A. No, sir; I never received any instructions from them. Q. Were there any agents, or watchmen, in charge of any hides there on the part of the City Bank of Buffalo? A. No, sir."

Other facts appear by the opinion of the Supreme Court.

The trial court entered judgment for defendant.

*Error assigned* among others was in entering judgment for defendant.

*Russell C. Stewart* and *George C. Miller*, for appellant.—The defendant was not a "subsequent purchaser in good faith:" Van Heusen v. Radcliff, 17 N. Y. 580; Anderson v. Read, 106 N. Y. 333; Winslow v. Leonard, 24 Pa. 17; Gonser v. Smith, 115 Pa. 456; Barnard v. Campbell, 55 N. Y. 456; Parker v. Baxter, 86 N. Y. 586; Winne v. McDonald, 39 N. Y. 240; Goodwin v. Wertheimer, 99 N. Y. 149; Fenby v. Pritchard, 2 Sanford, 151; Stalker v. McDonald, 6 Hill, 93; Phœnix Insurance Co. v. Church, 81 N. Y. 218; Farwell v. Importers, etc., Bank, 90 N. Y. 483.

In no case is the intrusting of the possession of personal property to another, even to one whose business is to sell, sufficient to deprive the true owner of the property, even against a purchaser in good faith: Quinn v. Davis, 78 Pa. 15; McNeill v. Bank, 46 N. Y. 325; Pickering v. Busk, 15 East. 44; Woods's App., 92 Pa. 379; Bradlee v. Whitney, 108 Pa. 363; O'Connor v. Clark, 170 Pa. 318; Wilkinson v. King, 2 Campbell, 335; Quinn v. Davis, 78 Pa. 15; Weaver v. Barden, 49 N. Y. 286; Moore v. Bank, 55 N. Y. 41; People v. Bank, 75 N. Y. 561; Bickford v. Menier, 107 N. Y. 490; Smith v. Clews, 114 N. Y. 190; Walsh v. Ins. Co., 73 N. Y. 5; Crane v. Gruenewald, 120 N. Y. 274; Eldred v. Hazlett, 33 Pa. 307; Waters's App., 35 Pa. 523; Ream v. Harnish, 45 Pa. 376; Sunderlin v. Struthers, 47 Pa. 411; McKnight v. Bell, 135 Pa. 358; Sensinger v. Boyer, 153 Pa. 628; Griffiths v. Sears, 112 Pa. 523; Miller Piano Co. v. Parker, 155 Pa. 208; Bank v. Wentzel, 151 Pa. 142; Clow v. Woods, 5 S. & R. 275; Stephens v. Gifford, 137 Pa. 219; Janney v. Howard, 150 Pa. 339; Kitchen v. Lowery, 127 N. Y. 53; Jones v. Graham, 77 N. Y. 628; Tremaine v. Mortimer, 128 N. Y. 1.

*Edward J. Fox* and *Frank Reeder*, for appellee.—The defendant was a purchaser in good faith: Spicer v. Waters, 65 Barb. (N. Y.) 227; Merritt v. R. R., 12 Barb. 605; Stephens v. Gifford, 137 Pa. 219; O'Connor v. Clark, 170 Pa. 318.

In Caulfield v. Van Brunt, 173 Pa. 428, this Court expressly decided that the failure to file a chattel mortgage in New York was void as against creditors: Post v. Berwind-White Coal Mining Co., 176 Pa. 297; Macauley v. Hopkins, 35 Hun, 556.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898:

Although the findings in answer to specific requests by the parties, and the supplemental findings in the court's opinion, present the facts at great length, yet the real controversy in this case lies within a very narrow compass. It is agreed, first, that the title to the leather in suit is to be determined by the law of New York; secondly, that the transaction by which the plaintiff acquired title from Moffatt Bros., the former owners, though in form a warehouse receipt, was in legal effect a chattel mortgage; and thirdly, that by the law of New York, the mortgage to the plaintiff not having been accompanied by a change of possession, nor having been filed of record, was void against a subsequent purchaser in good faith. The whole controversy turns on the single question whether defendant was such purchaser.

On this question the learned judge found the facts to be that defendant having been a purchaser from Moffatt Bros. for some time and to a large extent, and in February, 1895, having a contract for future delivery then running, made on February 1, a further purchase of leather to be delivered between April and September, and on February 15, gave Moffatt Bros. promissory notes amounting to $9,000, as part payment in advance under this last contract. These notes were at once discounted by innocent holders, and at maturity were paid by defendant. On May 20 the leather now in suit was shipped by Moffatt Bros. by common carrier to defendant at Easton, and on May 24 was received by defendant as a delivery on account of the purchase of February 1. It, or a large part of it, was leather made from the hides mortgaged in January to the plaintiff, but defendant had no notice of any interest on the part of plaintiff until the day the leather was received, when plaintiff telegraphed notice of its claim.

On these facts the court below held that the defendant was a purchaser in good faith, whose title under the New York law would prevail against plaintiff's unrecorded mortgage, saying:

" It is the accepted rule that title passes to the buyer in sales, for future delivery, whenever the price is paid, and the goods to be sent are separated by the seller and identified from his general stock, or manufactured and consigned to the common carrier for transportation. The delivery of this leather by Moffatt Bros. to the railroad company in New York, for carriage to the defendant, was done with the intent to transfer the property. Defendant had no notice of plaintiff's claim to it before it was shipped, but was apprized by telegram of the adverse title before it was received, and the contract with the seller required the leather to be delivered ' f. o. b., Easton.' Having three months previous to this, however, fully paid for it, the notice by the plaintiff becomes immaterial, if in point of fact the defendant is the first to acquire possession. Qui prior est tempore potior est jure."

The appellant contends that defendant was not a bona fide purchaser under the law of New York, because the contract with Moffat Bros. was merely executory, no particular leather being designated, set apart or referred to in the contract, and the defendant did not advance its notes on the faith of the leather in suit. The argument on this point is rested very largely upon the case of Barnard v. Campbell, 55 N. Y. 456, and 58 N. Y. 73, but we do not find that it sustains appellant's position. In that case the defendants bought linseed from one Jeffries and paid him in advance. Jeffries at the time of sale and payment had no linseed, but subsequently obtained a quantity from plaintiffs by fraud, and delivered it to defendants. Plaintiffs, on the discovery of the fraud, at once rescinded their contract with Jeffries and reclaimed the linseed. It was held that they might do so, as defendants had not paid on the faith of any apparent ownership by Jeffries or authority to sell. The ground of the decision appears plainly from the following extract from the opinion : " The defendants paid for the merchandise by remitting to Jeffries on the 21 of August, at which time Jeffries had neither the possession nor the right of possession of the property, nor any documentary evidence of title, or any indicia of ownership or of dominion over the property of any kind." And in the opinion on the motion for reargument, 58 N. Y. 73, it is again said the plaintiffs " would have lost their right absolutely if, during the interval between the delivery of the goods, the vesting of this defeasible title in Jeffries, and

the disaffirmance of the sale by the plaintiffs, the goods had been sold to an innocent third party for a valuable consideration." We do not see that this introduces any new element into the usual definition of a bona fide purchaser, though some difference of opinion might arise, as it did in fact in the court of first instance, as to its application. The facts of the present case are so entirely different that we do not think they are within the same application of the general rule. The leather in question, or the hides from which it was made, was at the time of defendant's purchase in the possession of Moffatt Bros., and as to defendant it was and continued to be Moffatt Bros.'s property. Plaintiff was not an owner who was fraudulently deprived of his property, but a purchaser from Moffatt Bros. who, as against defendant, never acquired any title at all. The property was left in the hands of its former owners from whom defendant bought in the regular course of business, for future delivery. Payment in advance was none the less payment, and nothing remained to make the sale complete but delivery. Until delivery both parties held incomplete and defeasible titles. If plaintiff had taken possession first, under its mortgage, its title would have been the superior, but as delivery was first made to defendant, the latter's title first became complete and must prevail.

The application of the law of another state is always a matter of some delicacy, and not entirely free from doubt. But the phrase "purchaser in good faith" is of such general use and established meaning that it is highly improbable that it has any special or different signification in the great commercial state of New York, and certainly no authority has been shown to lead us to suppose so. On the contrary, the cases cited by appellant are all in accord with the general common-law definition, whatever difference of opinion might arise as to the results reached upon the different facts.

The learned judge below also rested his judgment on another view of the case, based on the authority permitted to Moffatt Bros. under the contract with plaintiff, to manufacture the hides into leather and sell it, and a large part of appellant's argument is devoted to this aspect of the case. But as we deem the judgment entirely sound and well founded on the principle already discussed, it is not necessary to enter on the other branch.

Judgment affirmed.