## Commonwealth v. Cutshall.

*Comity between states—Chattel mortgage—Condemnation of vehicle used in transportation of intoxicating beverages—Act of March 27, 1923.*

1. When the enforcement in this State of a contract made in and depending for its validity upon the laws of another state would contravene our positive law or public policy, such enforcement will not be granted.

2. The intent and policy of the Act approved March 27, 1923, P. L. 34, is to break up the transportation of liquors designed to be used for beverage purposes, and it is to this end that it provides for the forfeiture, condemnation and sale of every vehicle used in such transportation (with certain exceptions), and specifically makes it the duty of officers to seize every such vehicle and turn it over to the district attorney, by whom it is to be held (unless bail in double its value be given by the owner) to abide the judgment of the court in the prescribed condemnation proceeding.

3. An automobile seized on the ground that it has been used in the unlawful transportation of intoxicating beverages, and being in the possession of the district attorney awaiting the institution of condemnation proceedings under the Act of March 27, 1923, will not be delivered up to the holder of a mortgage on said vehicle given in the State of Ohio and providing, *inter alia*, that "on . . . any misuse, sale or attempt to sell, or to remove from the County . . . or upon any seizure by any process of law . . . the said mortgagee, or assigns, may take said property into his possession and dispose of the same at public or private sale" and apply the proceeds of sale to the expenses thereof and to the claim upon the mortgage, rendering the surplus, if any, to the mortgagor or his assigns, even though said mortgage and said provision be valid and enforceable in the State of Ohio.

4. Whether, in such case, the chattel mortgagee would be entitled to have his mortgage paid out of the proceeds of a sale in the condemnation proceedings of the vehicle is a question, the proper time for deciding which is when a proceeding for a decree of condemnation and sale comes before the court.

Demurrer to petition. Q. S. Washington Co., Aug. T., 1923, No. 250.

*Thomas L. Anderson,* for Commonwealth; *R. E. Burnside,* for petitioner.

BROWNSON, P. J., Oct. 22, 1923. — On Aug. 1, 1923, Lloyd Cutshall was arrested on a charge of having unlawfully transported intoxicating liquors. He was subsequently released on bail. An indictment having been found, his case was at the ensuing term called for trial, whereupon he failed to appear, and his recognizance was forfeited and a bench warrant issued for his arrest. At the time when the original arrest was made, an automobile belonging to him was seized, upon the ground that it had been used by him in and for such unlawful transportation, and it is now in the custody of the district attorney of this county. The district attorney has not as yet instituted the condemnation proceeding *in rem,* which is provided for in the Act approved March 27, 1923, § 11, sub-division *(d),* P. L. 41, but Sparks B. McCauslen, as claimant, has presented his petition praying for relief, upon the ground that Cutshall on March 8, 1923, at Steubenville, Ohio, gave to the petitioner a chattel mortgage of said automobile to secure the payment to petitioner six months thereafter of the sum of $350, with interest at 6 per cent., and that by the terms of this mortgage, upon "the seizure of said automobile without the consent of petitioner, the title to said automobile became lawfully vested in petitioner," it being further averred that the unlawful use of the automobile by Cutshall was without the knowledge and consent of the petitioner. A copy of this mortgage is annexed to the petition. It contains a covenant of the mortgagor that "on . . . any misuse, sale, or attempt to sell, or to remove from the county, . . . or upon any seizure by any process of law, . . . the said mortgagee or assigns may take said property into his possession and dispose of the same at public or private sale" and apply the proceeds of sale to the expenses

Commonwealth *v.* Cutshall.

thereof and to the claim upon the mortgage, rendering the surplus, if any, to the mortgagor or his assigns. It is apparently upon this stipulation that the averment of the petition, which is quoted above, was intended to be based. To this petition the district attorney has demurred, upon the ground that it does not show such a right in the petitioner as to entitle him to possession of the motor-vehicle as against the right of the Commonwealth.

As is obvious, the only question raised by the demurrer is whether the averments of the petition exhibit rights in the petitioner which are paramount to any right of the Commonwealth to ask that this motor-vehicle be condemned and adjudged to be forfeited, and to hold it until the appropriate proceedings for that purpose can be had. Until the proceedings specified in sub-division *(d)* of section 11 of the statute are had, and Lloyd Cutshall, whom the Commonwealth claims to be the owner, shall have been notified personally or by publication to appear and answer, the court will not be in a position to adjudicate as to whether or not he, by his acts, has incurred a forfeiture of his property. It may be a question whether the claims of ownership provided for in clauses (IV) and (VI) of sub-division *(d)* are not exclusively intended by the act to be filed in, and to be a part of, the condemnation proceeding provided for by clause (I); but as the district attorney has by the demurrer raised only the single question, what are, as a matter of law upon the facts averred, the relative rights of the Commonwealth and the petitioner as to the possession of the automobile, we shall pass over the point of practice and proceed to consider the question thus raised.

We have here the case of a chattel mortgage given in the State of Ohio. Whether it was ever recorded or filed in accordance with the laws of that state does not appear, but as counsel seemed at the argument to be treating this instrument as one that was valid and operative in Ohio, we shall for present purposes assume this.

By the law of Pennsylvania, there can be no valid mortgage of an automobile, effective as to third persons, unless there be a concurrent delivery of possession to the mortgagee. But many other states have laws giving validity to chattel mortgages where the mortgagor retains the property in his own possession. When a chattel which has been mortgaged in one of those states is subsequently brought into Pennsylvania, it is a settled rule that our courts will uphold and enforce the mortgage contract as between the parties themselves, but not as against *bona fide* purchasers from, or creditors of, the mortgagor: MacCabe *v.* Blymyre, 9 Phila. 615; City Bank *v.* Boot & Shoe Co., 187 Pa. 30; State Bank *v.* Carr, 15 Pa. Superior Ct. 346; Buffalo Coal Co. *v.* Railway Co., 8 W. N. C. 126. The principles upon which this rule rests are clearly stated by Hall, P. J., in the case of MacCabe *v.* Blymyre, 9 Phila. 615, as follows: "The laws of a nation or state have not, *ex proprio vigore*, any binding force beyond the limits of its territory. Any effect they have is *ex comitate*. And the judicial tribunals in Pennsylvania must determine how far comity is to be permitted to interfere with the domestic interests and policy of the State. . . . No people are bound to enforce a contract in contravention of their public law and policy. Whilst a lien created by the *lex loci* will generally be enforced wherever the property may be found, yet this is not necessarily so in preference to claims arising under the *lex rei sitæ:* 5 Cranch, 289; 12 Wheat., 361. The comity extended to the *lex loci* must yield to the positive law and public interests of the place where the remedy is sought: Story's Conflict of Laws, § 244, *et seq.;* 2 Kent's Comm., 458. The exercise of comity in admitting or restraining the application of the *lex loci* must unavoidably rest in sound judicial discretion, dictated by the circumstances of

4 D. & C.

the case: Story's Conflict of Laws, § 28; Blanchard *v.* Russell, 13 Mass. 6; Com. *v.* Aves, 13 Pick. 193."

The cases in which the question has arisen heretofore in Pennsylvania in connection with chattel mortgages have been cases involving the rights of *bona fide* purchasers or creditors; but the principle on which they rest is a general one which has been applied to other subject-matters, in instances where purchasers or creditors were not involved, viz., that when the enforcement in this State of a contract made in and depending for its validity upon the laws of another state would contravene our positive law or public policy, such enforcement will not be granted. Therefore (aside from the question whether the Commonwealth should be regarded as within the category of creditors, or in a position analogous to that of a creditor, by reason of its prospective right to recover a fine and costs from Cutshall upon his conviction), if the enforcement of the covenant which is set up by the petitioner as having the effect of vesting in him the ownership of this automobile would be in contravention of the public policy established by the Act of 1923, or of the provisions of that act, such enforcement should not be granted.

This statute is intended to break up the transportation of liquors designed to be used for beverage purposes, such transportation being the very backbone of the greater part of the traffic in intoxicating beverages. To this end, it provides for the forfeiture, condemnation and sale of every vehicle used in such transportation (with certain exceptions), and specifically makes it the duty of officers to seize every such vehicle and turn it over to the district attorney, by whom it is to be held (unless bail in double its value be given by the owner) to abide the judgment of the court in the prescribed condemnation proceeding. This proceeding is, under the statutory provisions, to be *in rem*, and it is familiar law that "when the thing is inculpated under an *in rem* statutory provision, it may be forfeited, although the act which caused the forfeiture was not done by or with the consent of the owner:" 25 Corpus Juris, § 47, page 1171, and cases cited. A statute may, however, save the rights of innocent owners, and this Act of 1923 does so by the exceptions above referred to. These exceptions are two: First, when the owner of the vehicle, or one having the right of possession thereof, proves to the satisfaction of the court that the unlawful use of it was without his knowledge or consent, the court "may" order that it be returned to him: Section 11, sub-division *(b)* (III); and, second, where the holder of the legal title is the bailor in a "bailment lease or contract," and makes similar proof, although the condemnation and sale shall proceed, the money due him on such lease or contract shall be paid out of the proceeds of the sale: Section 11, sub-division *(d)* (III). In this instance the petitioner is not an owner, and does not have the legal title; he is a mere mortgagee. And while the mortgage does contain a covenant that, in certain events, he shall have the right to take the property into his possession, such possession, when taken, is to be for the specific and only purpose of making a sale in foreclosure of his mortgage lien. He took no action looking toward such a foreclosure sale before the vehicle had been seized by the Commonwealth of Pennsylvania, who now desires to have the property sold under the management of her own officers, nor is there any averment in his petition that he had become entitled before the seizure to take such action. What his petition sets up is that the mortgagor has covenanted that if the property be seized by an officer of the law, petitioner shall have the right to take it out of the possession of such officer. We do not think that such a covenant (even if it be valid in Ohio under its laws) should be allowed to affect the rights of the Commonwealth of Pennsylvania under our statute, or

Commonwealth v. Cutshall.

obstruct or interfere with the execution of the provisions and express directions thereof. Comity does not require that a contract made in another state, which would not be valid if made in Pennsylvania, shall here be enforced so as to effect such a result.

This is as far as we now go. The prayer of the petition is drawn in such a form that it would cover and embrace any sort of relief to which the petitioner might be found to be entitled. But if he means, as we understand that he does, to claim that in case he be not entitled to have the car taken out of the hands of the district attorney and delivered up to him, he should then be paid out of the proceeds of its sale the amount due on his mortgage, the proper time for deciding the question whether, under the provisions of the statute, a chattel mortgagee can be granted relief of this kind will be when a proceeding for a decree of condemnation and sale comes before the court. Moreover, this question has not been argued. The district attorney ought promptly to bring such proceeding before us, and should there be delay in doing so, the petitioner might move for the purpose of quickening such action.

And now, Oct. 22, 1923, the petition, in so far as it is a petition for an order that the automobile therein mentioned shall now be delivered to the petitioner, is denied; without prejudice, however, to the determination in the proceeding to be instituted by the district attorney for the forfeiture, condemnation and sale of said automobile under the Act of March 27, 1923, of the question whether on the facts averred by him the petitioner is entitled to, or may be given, any other relief.

From E. E. Crumrine, Washington, Pa.