## Personal Finance Company of New York, Appellant, *v.* General Finance Company.

Argued October 11, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, and RHODES, JJ.

*James E. Riely,* with him *White & Clapp,* for appellant.

*David S. Malis,* for appellee.

OPINION BY BALDRIGE, J., December 20, 1938:

The plaintiff, a New York loan corporation, as mortgagee under a chattel mortgage executed and duly recorded in that state, brought this action of trespass against the defendant, a Pennsylvania corporation, to recover damages for the conversion in the state of New York of its lien interest in a Chevrolet car while in the possession of Michael J. Cleary, the mortgagor.

The case was tried in the municipal court before a judge without a jury, and a finding was made for defendant. This result was due largely to the judge's concluding that our courts do not have jurisdiction over plaintiff's alleged right of action. Upon a refusal of its motion for a new trial, plaintiff appealed.

The essential facts are not in dispute. The plaintiff loaned Cleary and his wife, who resided at Valhalla,

Westchester County, New York, $300 on March 5, 1934, for which they signed a note and as security therefor executed a chattel mortgage covering, in addition to various household furnishings, the 1932 Chevrolet car in question.

About six months later, to wit, September 20, 1934, Cleary borrowed $275 from the Motor Credit System of White Plains, New York, a subsidiary of defendant, General Finance Company, and as security for this loan Cleary gave a bailment lease covering the Chevrolet car already mortgaged. Cleary defaulted in payments due under this lease, and defendant's agents repossessed the car on March 2, 1935, by breaking the lock of Cleary's garage and removing the car therefrom. As of that date, Cleary was in arrears in his payments $242.53, which amount was subsequently reduced by payments so that at the time of the trial there was alleged to be due the plaintiff $135.95. Under the terms of the chattel mortgage, plaintiff was entitled to immediate possession of the car upon Cleary's default in his payments.

It will be observed that all the transactions involved took place in New York state. The chattel, so far as disclosed, never was in Pennsylvania.

The plaintiff also offered in evidence, through its manager, a member of the bar of the state of New York, various sections of the New York statutes relating to chattel mortgages, the recording thereof, and the extent of the rights of a mortgagee under such instrument in New York state. This method of proving the New York law was not questioned by defendant. Cf. *Bank of America Nat. T. & S. Assn. v. Sunseri et al.*, 311 Pa. 114, 166 A. 573; *Bayuk Bros., Inc. v. Wilson Martin Co.*, 81 Pa. Superior Ct. 195.

Undoubtedly, the plaintiff has a right of action against the defendant in New York. The vital question before us is whether it may obtain legal redress in the courts of Pennsylvania for defendant's alleged unlawful act

committed in New York. As stated in Restatement, Conflict of Laws, §384: "If a cause of action in tort is created at the place of wrong, a cause of action will be recognized in other states." This same principle is clearly enunciated by Professor Beale in his Conflict Of Laws (1935), vol. 2, §378.3, p. 1290, in the following words: "If the law of the place where the defendant's act took effect created as a result of the act a right of action in tort this right will be recognized and enforced in another state unless to enforce the right is against public policy of the forum ...... This is true even though the action is based upon a statute in the state of the injury which is different from that of the forum; the question still being, what is the law of the state of injury, and if the recovery under that law is not contrary to the public policy of the state of the forum, recovery will be had on it." That rule controls where chattel mortgages are concerned. "The validity and effect of a mortgage of a chattel are determined by the law of the state where the chattel is at the time when the mortgage is executed:" Restatement, Conflict of Laws, §265. See, also, *City Bank of Buffalo v. Easton Boot & Shoe Co.,* 187 Pa. 30, 40 A. 1026.

Our courts have enforced rights of action created under the statute of a foreign state for wrongful death (*Dickinson, Admrx. v. Jones et al.,* 309 Pa. 256, 163 A. 516); personal injuries (*Clark v. Best Mfg. Co.,* 243 Pa. 353, 90 A. 186); damage to personal property (*Bayuk Bros., Inc. v. Wilson Martin Co.,* supra).

The defense advanced in the present case is that the public policy of Pennsylvania prevents the enforcement of chattel mortgages or of any right arising thereunder. Professor Beale in his Conflict of Laws, vol. 3, §612.1, states: "Nevertheless it may properly be pointed out that differences in law do not necessarily constitute a sufficient basis for a declaration that the rule of the foreign state is contrary to the strong public policy of the forum. There is, moreover, in the law of every

jurisdiction a strong policy in favor of recognizing and enforcing rights and duties validly created by a foreign law." See Restatement, Conflict of Laws, §612, comments (b) and (c).

The case relied upon by defendant is *Kaufmann & Baer v. Monroe Motor Line,* 124 Pa. Superior Ct. 27, 187 A. 296. There, certain trucks, upon which Stewart Motor Trucks, Inc., held a valid New York chattel mortgage, were brought into Pennsylvania and a writ of foreign attachment issued against them as the property of the New York chattel mortgagor owner. We held that the attachment of the trucks in this Commonwealth prevailed over the New York chattel mortgage. Admittedly, that conclusion, supported by our Supreme Court decisions, is not in accord with the cases in many other jurisdictions. See an extensive note under "Conflict of laws as to chattel mortgages," in 57 A. L. R. 702 et seq. Compare Restatement, Conflict of Laws, §§266-270; 11 C. J. p. 424, §33; 11 Am. Jur. p. 357, §§74-76.

To hold that the enforcement of this action is against public policy is to conclude that the plaintiff is attempting to do something injurious to the public good, inimical to public interest. There is no justification for such a conclusion. If defendant's contention were accepted, it would result in withholding a remedy from plaintiff and might very well give an undeserved benefit to the defendant.

The Kaufmann & Baer case, supra, and others kindred thereto, involving the removal of a chattel from the state where it was validly mortgaged to our state, are to be distinguished from the present one. Upon entry into our borders, the chattel, although previously validly mortgaged in another state, becomes subject to our laws. To this extent, jurisdiction in such situation is in rem and not in personam. As stated in *Commonwealth v. Studebaker Coupe,* 86 Pa. Superior Ct. 532, 535: "When the vehicle was brought into Pennsylvania,

by the owner it became subject to the laws of this state and any creditor of the owner might have caused it to be seized in execution for the payment of his debt, although that creditor knew of the existence of the mortgage in the state of Ohio."

The controversy in hand involves no conflict over the rights in a chattel between attaching creditors seizing the chattel here and a foreign mortgagee. Simply because a chattel mortgage would not be enforced if made here does not mean that rights arising under it in New York will not be given effect in our courts. That is shown by our Supreme Court in *McCurdy's Est.*, 303 Pa. 453, 154 A. 707, which involves a foreign right of action in contract rather than tort as here. It is pertinent to note that it was held that a citizen of Pennsylvania, who in Florida accepted a deed of Florida real estate and under the law there became personally liable to assume the mortgage debt, would likewise be liable in Pennsylvania, although no such personal liability could arise here without a writing signed by the grantee. Mr. Justice KEPHART (now Chief Justice) at page 461, very clearly pointed out that the right of action or contract right created by the law of another jurisdiction is not necessarily contrary to the public policy of the forum merely because such right would not arise in that forum. He quoted, with approval, the following language used in *International Harvester Co. v. McAdam et al.*, 124 N. W. 1042 (Wis.), 26 L. R. A. (N. S.) 774: "A contract ...... is not, necessarily, contrary to the public policy of a state, merely because it could not validly have been made there, nor is it one to which comity will not be extended, merely because the making of such contracts in the place of the forum is prohibited ......"

Although our attitude in the past may have been unfriendly toward chattel mortgages as contrary to public policy, our hostility apparently has been somewhat mollified. That we are now taking a more favorable

attitude is shown by the Act of July 15, 1936, First Ex. Sess., P. L. 47 (21 P. S. §841).

From the facts before us, we are of the opinion that no public policy is violated by permitting the plaintiff to prosecute its right of action arising under the New York laws.

As this case must be retried, we might add that we are of the opinion that the evidence offered by the plaintiff relating to the value of the automobile alleged to have been converted should have been admitted.

Judgment of the court below is hereby reversed, and a new trial granted.