## Carney v. Carney

*William Charles Brown*, for plaintiff.
*Layton M. Schoch*, for defendant.

CRUMLISH, J., May 3, 1939.—Plaintiff brought suit against defendant for the recovery of damages suffered as a result of defendant's negligence. She alleges that while she was a passenger in an automobile owned and operated by defendant, he carelessly and negligently ran off the paved highway and overturned at a point west of Cayuga, Province of Ontario, Canada. Defendant filed an affidavit of defense admitting ownership and denying agency, and under the heading of new matter set up the Revised Statutes of Ontario, 1937, chap. 288, sec. 47(2), which provides as follows:

"Notwithstanding the provisions of subsection I, the owner or driver of a motor vehicle, other than a vehicle

operated in the business of carrying passengers for compensation, shall not be liable for any loss or damage resulting from bodily injury to, or the death of any person being carried in, or upon, or entering, or getting on to, or alighting from such motor vehicle. 1935 C. 26, S. 11." It was further alleged that defendant is not in the business of carrying passengers for compensation.

Plaintiff filed a reply, which was also referred to as a "statutory demurrer", admitting the statute of Ontario and contending that the affidavit of defense is insufficient because the statute (1) "is in violation of the public policy of the Commonwealth of Pennsylvania and should not be adopted as the governing law;" and (2) "the said statute is violative of the Constitutions of the United States and Pennsylvania in that it removes an inherent right without due process of law, and therefore should not be adopted as the governing law."

1. The first question before us is: Does the statute of Ontario violate the public policy of the Commonwealth of Pennsylvania by invading a right guaranteed by article I, sec. 9, of the Constitution of Pennsylvania?

It is the aim of modern principles of conflict of laws to bring about, so far as is possible, a situation in which substantive rights will not be varied by the often fortuitous choice of a forum. See Dean Goodrich's article "Foreign Facts and Local Fancies." 25 Va. L. Rev. 26 (1938). In the field of torts the following rules have been adopted, as enunciated by the A. L. I. Restatement of Conflict of Laws §378:

"The law of the place of wrong determines whether a person has sustained a legal injury; and in §384(2): "If no cause of action is created at the place of wrong, no recovery in tort can be had in any other state."

These rules are an accurate statement of the settled Pennsylvania law: Clark v. Best Mfg. Co., 243 Pa. 353 (1914); Hall v. West Jersey & Seashore R. R. Co., 241 Pa. 399 (1913); Hoodmacher v. Lehigh Valley R. R. Co., 218 Pa. 21 (1907); Bayuk Bros., Inc., v. Wilson Martin

Co., 81 Pa. Superior Ct. 195 (1923) ; Fischl v. Chubb, 30 D. & C. 40 (1937). Despite the almost universal adoption of these rules, however, a more or less well-defined exception to them has frequently made its appearance in the decisions of this and other States. This exception has come to be known as the "public policy doctrine" and is expressed as follows in the A. L. I. Restatement of Conflict of Laws §612:

"No action can be maintained upon a cause of action created in another state the enforcement of which is contrary to the strong public policy of the forum." See also Personal Finance Co. of N. Y. v. General Finance Co., 133 Pa. Superior Ct. 582, 585-586 (1938).

At the outset it should be noted that the last-stated rule does not cover the present situation. We do not have here a case in which a foreign cause of action, unknown to our local law, is being asserted; we have instead a purported cause of action which could not arise under the law of the place where the operative facts occurred, but which would have arisen had those facts occurred in Pennsylvania. This is the first difficulty with which plaintiff is faced. It seems to us that it is an insurmountable one. While there may be substantial reasons in some cases why our courts should not extend the legal machinery of this State in enforcement of causes of action which are highly offensive to our local conceptions of decency and good morals, it is difficult to see how the common law of Pennsylvania can have caused rights to spring into being in Ontario in the instant case simply because the parties involved have later submitted themselves to the jurisdiction of a Pennsylvania court.

Nevertheless, plaintiff argues that inasmuch as the laws of this Commonwealth allow a guest who is not contributorily negligent to recover for injuries sustained as a consequence of the negligent conduct of his host, the Ontario statute should not be recognized. He admits the general proposition that the rights of the parties are governed by the laws of the place where the alleged wrong

was committed (lex loci delicti). He contends, however, that the statute of the Province of Ontario, where the accident occurred, should not be recognized in this State because it violates our public policy in that it offends against the provision in article I, sec. 9, of the Pennsylvania Constitution ("nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.") In support of his argument, plaintiff urges that an enactment of a similar statute by our legislature would be in conflict with the public welfare and therefore violative of our Constitution.

Mr. Justice Williams in Goodyear v. Brown, 155 Pa. 514, 518 (1893), defined public policy as follows:

"In a general way it may be said that public policy means the public good. Anything that tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy."

The regulation of the use of a motor vehicle as an instrument of transportation has long been a subject of legislative control. No review of the legislation on the subject is necessary to point out the various changes made from time to time in the interest of the public good. We are not prepared to say that the adoption by our legislature of a statute similar to the one adopted by Ontario or even a similar one adopted by Connecticut and other States would be held to be not in the interest of the welfare of our citizens. Mr. Justice Stone in upholding the constitutionality of the Connecticut statute in Silver v. Silver, 280 U. S. 117, 122, 74 L. Ed. 221, 225, made this observation:

"We can not assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing

frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. In some jurisdictions it has been judicially determined that a lower standard of care should be exacted where the carriage in any type of vehicle is gratuitous. See *Massaletti* v. *Fitzroy*, 228 Mass. 487; *Marcienowski* v. *Sanders*, 252 Mass. 65; *Epps v. Parrish*, 26 Ga. App. 399. Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts."

While we are not called upon to decide whether or not the Ontario statute, if adopted by our legislature, would be unconstitutional, we do not hesitate to disagree with plaintiff's contention as to public policy. To borrow Mr. Justice Cardozo's language, it does not "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the commonweal": Loucks et al., etc., v. Standard Oil Co. of N. Y., 224 N. Y. 99, 111 (1918); see also Goodrich's "Foreign Facts and Local Fancies", supra. Moreover, the only restriction upon the power of the legislature to suspend the operation of a general law or a general right is that the power, when exercised, must result in a suspension which is uniform both in privileges conferred and liabilities imposed in its application to all persons and property similarly situated and in like connection within the political territory or the class affected and it shall not be an arbitrary classification but one supported by a sound and defensible reason inherent in the subject matter.

2. The second contention raised by the pleading, namely, that the application of the Ontario statute to

the present case would amount to the violation of the "due process" clause of the Federal Constitution, must receive a similar answer. In Silver v. Silver, supra, Mr. Justice Stone upheld a Connecticut statute which was similar to the Ontario Act, excepting that it did not apply to the "intentional" or "reckless" action on the part of the driver. It is, therefore, highly doubtful that an identical statute, if adopted in this State, would be violative of the "due process" clause; and even if we were of a different opinion, it would not necessarily follow that we should refuse to apply the Ontario Act to this set of facts. In other words, we cannot agree that the concepts of "public policy" in conflict of laws and of "due process" are interchangeable. While in many instances, a court might be justified in refusing to enforce an otherwise applicable foreign statute for reasons which, if the statute were a local one, would prompt it to hold the statute violative of "due process", this is by no means true in every case. As we have already indicated, in order for a foreign statute or rule of law to be denied enforcement on the grounds of public policy, its objectionable features must rise to such a degree that it appears positively pernicious to enforce it in this State. The mere fact that a foreign legislature appeared to act arbitrarily and unreasonably would not necessarily be sufficient. It must always be remembered that a very strong element in the public policy of any modern State is the public policy in favor of applying the law of the place where events have occurred to controversies arising out of these events, no matter where those controversies happen to be litigated. See 3 Beale on the Conflict of Laws, p. 1651.

Accordingly, we hold that plaintiff's rights are based on the law of the place where the accident occurred and as there was no right of action in the Province of Ontario, Canada, the questions of law are decided against plaintiff and plaintiff is required to file an amended reply within 15 days from the date hereof.