## Fairchild, Appellant, v. Philadelphia, Wilmington & Baltimore R. R. Co.

| 148 | 527 |
|-----|-----|
| e202 | ²227 |
| 202 | ²229 |

| 148 | 527 |
|-----|-----|
| f37SC | ²279 |

*Common carrier—Connecting carriers—Limitation of liability—Lex loci contractus.*

While it is well settled that a limitation in a bill of lading does not relieve the carrier from liability for his own negligence, it is equally well settled that a common carrier may limit his liability by special contract.

A written contract for carriage of property is to be interpreted according to the law of the place in which the contract was made.

Where a railroad company issues a through bill of lading, in which its liability is limited to an agreed valuation, and which contains a clause

declaring that this carrier's responsibility is to cease upon delivery in good order at its terminus in the direction of destination to a connecting carrier, and an accident results while the property is in the hands of the connecting carrier, the limitation of liability applies in favor of the carrier in whose control the property is injured.

Argued March 24, 1892.   Appeal, No. 3, Jan. T., 1892, by plaintiff, Benjamin L. Fairchild, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1890, No. 968, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Trespass for damages for injury to plaintiff's property while in transit on defendant's road.

At the trial before ARNOLD, J., the evidence was to the following effect:

Plaintiff purchased a mare in Washington, D. C., for $400, and ordered that she be shipped to him at Harsimus, N. J., by railroad.  The mare was accordingly taken to the freight station of the Baltimore & Potomac R. R. Co., loaded on a freight car and consigned to the plaintiff.  All ordinary precautions for safe carriage were taken.  The testimony of the plaintiff was that after the train had passed Baltimore and passed into the control of defendant, it was suddenly stopped and then immediately started with such violence as to jerk both the mare and the man in charge of her off their feet.  The mare was thrown with such force that her back was broken, and upon the arrival of the train in Philadelphia, by the advice of a veterinary surgeon, she was killed.  Testimony on behalf of the defendant was to the effect that whatever injury occurred to the mare occurred before the arrival of the train at Baltimore.

The bill of lading issued by the Baltimore & Potomac R. R. Co. contained an express stipulation limiting the value of the mare to $100, and also contained the clause " This shipping receipt is not negotiable; it is intended for straight consignments only, and if given for merchandise marked for points beyond this carrier's lines, it is understood and agreed that this receipt is only to this carrier's terminus in the direction of destination, and that the rates are subject to difference in classifications adopted by other carriers. . . . This carrier's responsibility to cease upon delivery in good order at its terminus in the direction of destination as marked to such other carrier or person."

The court charged the jury as follows :

" The only question for you to examine as a question of fact is, how did this mare come to her death. Ridout, who had charge of her, said that when they came into the tunnel in Baltimore she was thrown down by a sudden jerk and he was thrown down with her, and when they came to Philadelphia they had her examined by a veterinary surgeon, and it was found that her back was broken and she had to be killed.

" On the other hand, the brakesmen and flagman say that the mare was down at a place called Odenton, eighteen miles this side of Washington, and that they saw some colored men come out of the car, and that one of them went into the car to see what was the matter and found that the mare was down. They had passed through one tunnel already, and that the colored man, that is Ridout, could give no reason why the horse was down. Another witness said that the mare had been frightened by a passing train and had broken her halter-strap and that was the cause of the injury. Now how did it occur ? Did it occur, as Ridout said, in Baltimore, by a sudden jerking of the train ? Ridout said the train stopped. Two other witnesses said the train did not stop. Ridout said the mare was not down before she came to Baltimore. Condon says she was down, for he saw her down. The flagman said he saw the colored man and he said the mare had been frightened by a passing train and had fallen down. Now, if the jury find that this train was suddenly stopped in a negligent and improper manner, in such a way as to throw the mare down, then the plaintiffs are entitled to recover in this suit. If, on the other hand, the mare shied at a passing train and that caused her to fall down and break her back, the company is not liable. If you believe Ridout, that the mare was killed by reason of the sudden stoppage of the car in Baltimore without any warning, then the railroad company is responsible for her value. On the other hand, if you believe she was killed by shying by being frightened by a passing train, then the company is not liable. [If you find that her injury and death arose from the negligence of the company in this case, then the plaintiff cannot recover more than $100. That is the amount at which the mare is valued in the bill of lading, and that under the law in Washington limits the amount for which the

railroad company is liable. That is the law of Washington where the mare was shipped, and is the law of Maryland where the mare was injured.] [1] [If you find for the plaintiff at all you cannot find for more than the $100 and interest since July, 1890.] [2] [The plaintiff is not entitled to recover for his expenses in looking after the mare. He is only entitled to recover the amount at which her value is limited in the bill of lading.] [3] "

The defendant submitted the following point:

" That the contract of shipment having been made in the District of Columbia, no amount exceeding $100 can be recovered. *Answer:* I affirm that point." [4]

Verdict for plaintiff for $105.50. Plaintiff appealed.

*Errors assigned* were (1–3) the portions of the charge in brackets, quoting them; (4) affirming defendant's point, quoting the point and the answer.

*M. Hampton Todd,* for appellant.—By the express terms of the shipping receipt it is only applicable to the Baltimore & Potomac R. R. Co. On delivery of the car containing the mare to the defendant, therefore, the common law liability of the carrier immediately attached: Camden & Amboy R. R. Co. v. Forsyth, 61 Pa. 81; Watson v. Bridge Co., 14 Me. 201; Street v. Laumier, 34 Mo. 469.

It is the law of the place of performance by which the mode of fulfilling the contract and the measure of liability for its breach must be determined: Brown v. Camden & Atlantic R. R. Co., 83 Pa. 316; Grogan v. Express Co., 114 Pa. 523; Weiller v. P. R. R. Co., 134 Pa. 310.

*David W. Sellers,* for appellee, not called on.

PER CURIAM, April 18, 1892:

We do not think the court below erred in limiting the damages for the loss of the mare to the amount at which it was valued in the bill of lading. The mare was shipped at Washington over the Baltimore & Potomac R. R., and consigned to the plaintiff at Harsimus, New Jersey. It was claimed that when the train reached Baltimore, and had passed into the control and custody of the defendant company, it was suddenly stopped and then immediately started, with such violence as to throw the mare off her feet with such force that her back was

broken.   The jury have found the fact of negligence.   The shipping receipt contained this stipulation : " When a valuation as agreed upon shall be named upon this shipping receipt, it is distinctly understood that such valuation shall cover loss or damage from· any cause whatever."

The appellant shipped this mare under a special contract arising on a bill of lading.   The valuation was that of the shipper.   While it is well settled that a limitation in a bill of lading does not relieve the carrier from liability for his own negligence (Penna. R. R. v. Miller, 87 Pa. 395), it is equally well settled in Pennsylvania that a common carrier may limit his liability by special contract: Penna. Co. v. Raiordon, 119 Pa. 577.   This written contract was made in the District of Columbia, and is to be interpreted by the lex loci contractus ∶ Forepaugh v. R. R., 128 Pa. 217.   In Hart v. R. R., 112 U. S: 331, it was distinctly held that the valuation named in the shipping receipt was binding upon all the parties.

Judgment affirmed.