**Charles H. WINSOR, individually and as Administrator of the Estate of Alma L. Winsor, Deceased, Plaintiff,**

**v.**

**UNITED AIR LINES, Inc., Defendant.**

**Civ. A. No. 17274.**

United States District Court
E. D. New York.
June 25, 1957.

Theodore E. Wolcott, New York City, for plaintiff.

Haight, Gardner, Poor & Havens, New York City, by Douglas B. Bowring, New York City, *of counsel*, for defendant.

BYERS, District Judge.

This is a defendant's motion to dismiss or, in the alternative, to transfer the action to the United States District Court for the District of Colorado.

The plaintiff, a resident of Newfoundland, individually and as administrator of his deceased wife, sues to recover damages for her death, and otherwise as to be stated, by reason of the crash of the defendant's airplane in the vicinity of Longmont, Colorado, on November 1, 1955.

The tragedy was caused by the placing of a bomb in the airplane by one Graham, in order to bring about the death of his mother who was a passenger on the plane which also carried the plaintiff's decedent.

The explosion of the bomb, which Graham had placed in his mother's baggage, caused the crash of the plane and the death of all passengers and crew. The crime was discovered and Graham has paid his penalty.

The plaintiff's intestate who was a resident of Newfoundland, had purchased air transportation from Gander to Seattle, Washington, and return.

Thus the transportation was international and is governed by the so-called Warsaw Convention, 49 Stat. 3000; it involved air-flight from Gander to New York, thence to Seattle by way of Denver. The ticket was issued to plaintiff's decedent by Trans World Airlines, Inc., at Gander for the round trip transportation above described, with intermediate stops at New York both ways.

The trip from New York was known as United Flight No. 629 and included a scheduled stop at Chicago, Denver and Portland, Oregon, before arrival at Seattle; the Chicago and Denver stops were made, and in the latter city the plane was refueled and had its last service check. A new crew took over the operation of the flight at Denver, where a number of passengers, including Graham's mother, boarded the plane for the flight to Seattle, their baggage having been loaded on the plane before departure.

The foregoing summary is taken from the affidavit of one Petty, Vice-President in charge of Flight Operations for the defendant, and is not contradicted on the part of the plaintiff.

Seemingly the defendant will be required to prove that it took all reasonable measures to prevent the happening or that such measures were impossible of accomplishment; also to present proof of the cause of the disaster and the

methods employed by the defendant in the loading of passengers' baggage.

By reason of the death of all who were on the plane, the fact of the explosion will necessarily be testified to by witnesses who observed it, of whom there are six; they apparently testified at the criminal trial of Graham.

Another witness will be one Stevenson, a pilot employed by the defendant, who was in the air at the time of the explosion and observed it from his plane.

Twenty persons are named who assisted in the collection and identification of the various parts of the plane after the explosion, and from those fragments and the description of the wreckage, those whose duty it was to investigate the happening were able to form an opinion of its cause; all but four of the foregoing reside in or near Denver, Colorado, and they reside in San Francisco, California.

It is said that other witnesses will be called who are employees of the Federal Bureau of Investigation and still others with regard to the purchase of dynamite by Graham. All of those witnesses are said to reside in or near Denver, except J. William Magee, a resident of Washington, D. C.

Seven employees of the defendant will testify concerning the method of loading the baggage aboard the plane in connection with this flight, and they all reside in Denver.

Four other persons, also residents of that city, are expected to testify concerning the usual and customary procedure followed in the loading of baggage on such a plane in Denver.

One named witness, it is said, will testify as to the absence of any explosive material in the air cargo being carried by the plane.

Numerous other witnesses are listed who are residents of Denver, who are said to have participated in the servicing of this plane immediately before its take-off; and finally the pilot of Flight 629 from Chicago to Denver will be a necessary witness and he also is a resident of Denver.

Since the plaintiff himself did not accompany his wife, it must be obvious that he cannot testify to any facts touching the actual happening; the only witness whom he expects to call is one Pinsent of Gander, Newfoundland, who will testify as to the condition of the decedent's body on arrival in Newfoundland; this is in connection with the third cause of action as pleaded in the complaint which is to the effect that the defendant violated its duty

> "to transport the body of the decedent to her husband * * * and to handle and care for the body of the deceased with dignity and respect customarily due to the dead, and in accordance with the wishes and desires of the deceased and of the plaintiff herein, and with regard for the feelings and anguish of the deceased's family."

It is alleged that this duty was disregarded in the respects mentioned in the complaint.

It appears that arrangements for the care of the bodies of the victims of this disaster were made by the Adamson Mortuary, Greeley, Colorado, and Mr. H. Ross Adamson of that enterprise is the one who possesses personal knowledge concerning the matters above referred to; he resides in Greeley, Colorado; his testimony is necessary to the defendant's case as to the third alleged cause.

Since the question of the defendant's liability under the Warsaw Convention is the basic issue in the case, it must be obvious that the extent to which its duties were either performed or neglected prior to and on the flight from Denver to Portland and Seattle, will be shown exclusively by the testimony of those who were familiar with what occurred. This means that the testimony of those witnesses or some of them cannot be dispensed with, and since many of them are not in the employ of the defendant, there can be no assurance that they will

testify at all, if the case is to be tried in this court.

It is stated without contradiction in the affidavits supporting the motion, that four other cases are now pending against this defendant based upon this explosion, of which two were begun in the United States District Court in Boston and on motion were ordered to be transferred to the United States District Court for the District of Colorado at Denver. A third was begun in the United States District Court for the Northern District of California, Southern Division, which was also so transferred, and one action was begun in Denver.

It would seem from the nature of the case that all of these causes are likely to be consolidated for trial, because the issues would seem to be common to all. Under these circumstances, I believe that the court should exercise the power confided to it by Title 28 U.S.C. § 1404(a).

The question of jurisdiction under Article 28 of the Warsaw Convention is not free from doubt, the narrow issue being whether the defendant maintains a "principal place of business" in New York City, since it is clear that the decedent did not there enter into contractual relations with this defendant.

The plaintiff relies upon Berner v. United Air Lines, Inc., 3 A.D.2d 9, 157 N.Y.S.2d 884. In that case the ticket was purchased in the New York office of the Air Line sought to be held responsible for an airplane crash. The decision was that the British Commonwealth Pacific Air Lines sold the ticket in question through British Overseas which maintained an office in New York, namely, it was doing business there through the activities of British Overseas.

The case is parallel to this only with reference to the nature of the business being conducted by this defendant in the City of New York in view of the assertion made in the affidavits submitted on behalf of this motion. From that of its said Vice-president, Petty, it appears that this defendant is a Delaware corporation and that "its principal executive offices are located in Chicago, Illinois, and its main Operating Base is located in Denver, Colorado."

There is a paucity of factual showing concerning the nature of the business done in the New York office of the defendant, but sufficient has been shown to support the inference hereby drawn, that the New York office is the place where much of the booking for air flights over the defendant's line is done; and it is thought that not too fine a distinction should be drawn at least for the purposes of this motion, between the New York office and the Chicago office.

Thus the motion to dismiss will be denied, for the reason that apparent compliance with the jurisdictional requirements of Article 28 of the Warsaw Convention has been shown.

As above stated, it is thought however that the case should be transferred for trial to the Denver jurisdiction for the convenience of witnesses.

The cases cited by the plaintiff have been examined, particularly Merrill v. United Air Lines, D.C., 151 F.Supp. 104, and Sokolowska v. National Airlines, D. C., 154 F.Supp. 376, both in the Southern District of New York, as to which cases the court has had the benefit of consulting the opinions.

In the first named, the facts are so remote that the case is of no assistance in the disposition of this motion. As to the second, a crash of an airplane in the Gulf of Mexico on February 14, 1953, was involved. It was asserted in the complaint that there was negligence on the part of the defendant in the maintenance and operation of the plane, and on the part of the builder that there was negligence in the manufacture and design. The defense was Act of God, and the opinion discloses that none of the witnesses who could be expected to testify concerning weather conditions was shown to be a resident of Alabama, to which district it was sought to transfer the case. The court observed that there were no cases involving the same dis-

aster pending in Alabama, and thus that the balance was not shown to be in favor of the defendants' case. The opinion concludes with the statement that the defendants have failed to show that the transfer as desired would "make the trial markedly more convenient."

It is thought that the showing in this case is decidedly to the contrary.

Apparently the theory of the plaintiff's cause is that the defendant should have detected the presence in the baggage of Graham's mother of the bomb which caused the disaster; whether he can sustain that position will depend upon what the testimony reveals on the part of those who participated in the inspection and preparation of the plane for its flight to Portland and Seattle.

The motion to transfer to the United States District Court for the District of Colorado is granted.

Settle order.