**Sidney W. POPKIN**

v.

**EASTERN AIR LINES, INC., and Lockheed Aircraft Corp., and General Motors Corporation and succeeding cases captioned in the orders of 10/17/61 (Document No. 24 in C. A. 28664) and 11/1/61 (Document No. 7 in C. A. 29724), except Civil Actions Nos. 30390 and 30391.**

Civ. A. Nos. 28664, 28741, 28762–28764, 28788, 28789, 29099, 29100, 29159–29162, 29274, 29275, 29615, 29616, 29724, 29768–29884, 29901, 30078, 30079, 30200, 30230, 30257–30260, 30263, 30266, 30284, 30288, 30289, 30300–30306, 30343, 30344, 30346 and

Nos. 321, 323, 325, 327, 329, 335 and 375 of 1961.

United States District Court
E. D. Pennsylvania.

April 6, 1962.

B. Nathaniel Richter, Milton M. Borowsky, Thomas E. Byrne, Jr., Ralph Earle, II, and John R. McConnell, Philadelphia, Pa., O. Jacob Tallman, Allentown, Pa., Harry D. Sporkin, David M. Hass, Abram P. Piwosky, Philadelphia, Pa., Lee S. Kreindler, New York City, for various plaintiffs.

Owen B. Rhoads and Arthur E. Newbold, III, Philadelphia, Pa., for General Motors.

Robert E. Jones, Philadelphia, Pa., for Eastern Air Lines.

Sidney L. Wickenhaver, Philadelphia, Pa., for Lockheed Aircraft.

Drew J. T. O'Keefe, U. S. Atty., Joseph H. Reiter, Asst. U. S. Atty., Max L. Kane, U. S. Dept. of Justice, for United States.

VAN DUSEN, District Judge.

These 55 cases,[1] involving fatal and, as to three plaintiffs, non-fatal injuries suffered when an Electra airplane manufactured by Lockheed, having engines made by General Motors, and owned and operated by Eastern, crashed approximately one minute after take-off in Boston Harbor on October 4, 1960, are before the court on Motions to Transfer under 28 U.S.C.A. § 1404(a). There are 114 similar cases pending in the United States District Court for the District of Massachusetts (see Document No. 30 in C.A. 30078). The record in these cases (see, particularly, statements of Lee S. Kreindler, Esq. at the argument) indicates that the primary basis for liability on which the plaintiffs presently rely is alleged fault of the defendants resulting in bird ingestion by the turbo-prop engines of the plane involved in this suit, as well as in engines of other planes using the Logan International Airport, Boston, at about the time of the accident.

In Jurgelis v. Southern Motors Express, 169 F.Supp. 345 (E.D.Pa.1959), this court said:

"In Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, the Supreme Court, in discussing the relation of 28 U.S.C.A. § 1404(a) to the doctrine of forum non conveniens as recognized by the Supreme Court in Gulf Oil Corp. v.

---

1. There are 28 plaintiffs involved in these 55 cases, since 13 plaintiffs have filed two suits in this court and 7 plaintiffs have filed three cases in this court resulting from the injuries received in the October 4, 1960, airplane accident at Boston, Mass. Only one of the 114 cases in the Massachusetts District Court is an admiralty action, whereas 7 of these cases are suits in admiralty brought by the same parties who have also filed Civil Actions in this court.

Wherever "plaintiffs" is used, it includes libellants and wherever "defendants" is used it includes respondents.

One of these cases has already been transferred due to improper venue (C.A. 30307).

Gilbert, 1946, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, said at page 32 of 349 U.S. [29], at page 546 of 75 S.Ct. [545]:

"'* * *, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.'

"It appears, therefore, that under the present state of the law, the factors to be considered by a court in determining whether or not to transfer the action under § 1404(a) are established by the Gulf Oil Corp. case,[2] and the degree of discretion to be exercised by the court is established by the Norwood case."

The last sentence quoted above was approved by Chief Judge Biggs, sitting specially in this court, in Medich v. American Oil Company, 177 F.Supp. 682, 683 (E.D.Pa.1959). See, also, All States Freight v. Modarelli, 196 F.2d 1010 (3rd Cir., 1952), where the court said at page 1011:

"The statute limits the privilege of the plaintiffs to have his lawsuit tried in the forum of his choosing if he can there get jurisdiction over the defendant. The purpose of the limitation is clearly to make the inevitably uncomfortable (for the litigant) judicial process cheaper and more convenient and, if possible, more prompt."

After consideration of the record in these cases, the undersigned has concluded that transfer is required under 28 U.S.C.A. § 1404(a), as follows:

## I. Convenience of the Parties

 In this case, plaintiffs claim their convenience would be served by a trial in this District and the defendants claim that it would be more convenient for them to have these cases tried in the District of Massachusetts.[3] The

2. In the Gulf Oil Corp. v. Gilbert case, supra, the court said at pp. 508-509 of 330 U.S., at pp. 843 of 67 S.Ct.:

"* * * An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

3. There is nothing in 28 U.S.C.A. § 1404(a) which precludes transfer because the plaintiff is a resident of the transferor District. See, for example, Norwood v. Atlantic Coast Line R.R. Co., C.A. 15810, p. 4 of opinion of then Chief Judge (now Senior Judge) Kirkpatrick dated 7/12/54, petition for writ of mandamus and prohibition denied (3rd Cir., No. 11,364, on 7/16/54), aff'd. sub. nom. Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Harry Winston, Inc. v. Zale Jewelry Company, 191 F.

burden on the survivor-plaintiffs of presenting their damage testimony in the transferee District has not been overlooked, but this is a burden often falling upon persons who, having elected to travel away from home, are involved in accidents and must have been considered by Congress in enacting 28 U.S.C.A. § 1404(a). None of the affidavits allege that any of the plaintiffs is impecunious, nor is their financial condition stated in the record.

## II. *Convenience of Witnesses*

The record makes clear that the District of Massachusetts will be more convenient for the presently known witnesses on the issues of liability and of degree of culpability of the defendants.[4] The Collins Affidavit (Document No. 31 in C.A. 28664) alleges that (a) all but six of the 47 eye witnesses to the accident known to General Motors reside in the District of Massachusetts and within 25 miles of Boston (par. 12);[5] (b) four of

ten survivors of the crash reside in the District of Massachusetts and within 60 miles of the center of Boston;[6] (c) four employees of the Logan Airport who prepared the plane for flight reside in the vicinity of Boston; (d) seven operators of the control tower at Logan International Airport, who were eye witnesses to the aircraft's flight and crash and who would know the time of the take-off and crash, reside within 25 miles of center city Boston (see par. 15 of Document No. 31 in C.A. 28664); (e) all but one of the six experts who first examined the bodies of the dead birds reside within twelve miles of center city Boston and the sixth such expert resides in New Hampshire, approximately 60 miles from Boston (see par. 17 of Document No. 31 in C.A. 28664); and (f) five other potential witnesses having knowledge of the presence of birds at the airport, and some of whom discovered dead birds at the airport, reside within 25 miles of Boston (see pars. 16 and 18 of Document No. 31 in C.A.

Supp. 686 (S.D.N.Y.1961); Huff v. Nashville, Chattanooga & St. Louis Ry., 88 F.Supp. 735 (S.D.N.Y.1949). As stated in Brown v. Woodring, 174 F.Supp. 640, 645 (M.D.Pa.1959):
 "'Defendant's mandatory margin for victory * * * need not be an overwhelming one.' A court should not hesitate to disturb plaintiff's choice of forum if the three statutory factors dictate transfer."

4. The Massachusetts Death Act, in relevant part, provides:
 "A person who (1) by his negligence causes the death of a person * * *, or (2) by wilful, wanton or reckless act causes death of a person * * *, or (3) operates a common carrier of passengers and by his negligence causes the death of a passenger, or (4) operates a common carrier of passengers and by his wilful, wanton or reckless act causes the death of a passenger * * *, shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability * * *. A person shall be liable for the negligence or the wilful, wanton or reckless act of his agents or servants while engaged in his business to the same extent and subject to

the same limits as he would be liable under this section for his own act, except that the damages shall be assessed with reference to the degree of culpability of his agents or servants." Mass.Ann.Laws, c. 229, § 2 (Suppl.1961).

5. The second sentence of this paragraph states: "These witnesses observed the takeoff, flight and crash of the aircraft and would be able to testify to its flight path, describe the nature of its flight and crash and furnish testimony relevant to the time interval between takeoff and crash."

6. In par. 13 of this Affidavit, it is alleged that these witnesses would be able to testify as to the course of the plane's flight, the sound of its engines, and the results of the crash. In par. 4 of the unsworn answer to the Motions to Transfer filed by plaintiffs in Civil Actions Nos. 28664, 29881, 29882, 29883, 29884, 29901, 30300, 30307 and 30344 and Nos. 321, 323, 325, 327, 329, 335 and 337 of 1961 in Admiralty, it is alleged that Major Sylvester Koenig resides in Greenville, S. C. (Document No. 35 in C.A. 28664), rather than Falmouth, Mass., as alleged in this paragraph 13, but the residence of this survivor of the crash is not stated in any affidavit filed by plaintiffs.

28664).[7] Also, it is clear that it will be more convenient for such witnesses if there is to be one trial, rather than several, and if the discovery can be conducted under the supervision of one court.[8] Cf. MacAlister v. Guterma, 263 F.2d 65, 68–70 (2nd Cir., 1958).

Plaintiffs have not filed any affidavits contradicting the above sworn allegations, but have emphasized, generally, without listing any additional specific witnesses in their affidavits (except for six individuals listed without specifying the area of their testimony in Document No. 35 in C.A. 28741 and five individuals listed as damage witnesses for one plaintiff in Document No. 29 in C.A. 30078), that most of their compensatory damage witnesses come from this district or near it.[9] Experience in this and other Districts indicates that, once the issues of liability have been determined, relatively few of a large group of cases such as these, resulting from one accident, go to trial on the damage issues. Furthermore, as indicated below, there are several legal hurdles the personal representative plaintiffs have to overcome before compensatory damages become pertinent in their cases.[10]

Some plaintiffs also stated in their affidavits that they seek to establish that the accident occurred as the result of negligent design and testing of the engines by General Motors, negligent design and testing of the aircraft by Lockheed, negligent testing of the aircraft, as well as negligent training and physical examinations of the flight personnel, by Eastern, and negligence of the Government in execution of its responsibility for flight safety. See par. 8 of Document No. 29 in C.A. 30078. At the argument, it was admitted that plaintiffs hoped that the Government agency investigating the crash would be able to show faulty design and testing of the aircraft and its engines, but no definite finding to this effect has been made over 18 months after the crash. Hence, there is nothing specific on the record to show that any large number of witnesses from outside the Boston area, and for whom the transferor District would be more convenient than the transferee District, will be required for the trial of the above-mentioned issues of liability and degree of culpability. Employees of the defendants from California and Indiana, referred to at page 10 of the Kreindler Affidavit, being Document No. 12 in C.A. 29724, would not be substantially inconvenienced any more by a trial in Philadelphia than one in Boston,[11] but it is clear that they will be inconvenienced by having to testify at trials in both places, as opposed to one trial in Boston (see footnote 8 above, showing that the transferee District is the only place where there can be a single trial). Employees of the Civil Aeronautics Board, Bureau of Safety, will similarly have to testify in the District of Massachusetts in any event and, if the transfer of these 55

---

7. The Wickenhaver Affidavit lists some of the same witnesses as those referred to above in the Collins Affidavit. See Exhibit B to Document No. 30 in C.A. 28664. In par. 8 of that Affidavit, there is named an additional witness as to the birds living in the transferee District (John J. Phelan, of Winthrop, Mass.).

8. Since the United States of America is one of the defendants, the only District in which all the actions can be consolidated for trial is Massachusetts. See 28 U.S. C.A. § 1402(b), providing that the United States may only be sued "where the plaintiff resides or wherein the act or omission complained of occurred."

9. For example, the McConnell Affidavit (Document No. 29 in C.A. 30078) lists six compensatory damage witnesses that plaintiff Ward wishes to call "from this area" and does not deny that he was also hospitalized in the Boston area or that medical witnesses from that area could present helpful evidence on the issue of damages—see, also, Affidavits attached to Document No. 35 in C.A. 28664 and Documents Nos. 34 and 35 in C.A. 28741.

10. If agreement on damages cannot be secured in the cases against the Government, it is most probable that the Government would agree to a determination of the damage issues by this court.

11. A trial in this District would be less convenient for defendants since it would require them to transport their employees to testify at least twice from the west or mid-west to the eastern part of this country.

cases is denied, they will have to attend another trial in this District.

### III. The Interest of Justice

The interest of justice requires the transfer of these cases to the transferee District for these reasons, among others:[8]

(1) Consolidation of all the cases arising from this accident for purposes of proceedings before trial is likely to procure fairer and more orderly trials for all litigants and save needless time and expense for the public, including jurors, and other litigants whose cases are awaiting trial.

See MacAlister v. Guterma, supra, 263 F.2d at 68–70; O'Donnell v. Watson Bros. Transportation Company, 183 F.Supp. 577 (N.D.Ill.1960); and cases cited in those cases. With reference to the argument in the attached letter of January 11, 1962 (based on a letter from the Clerk of the Massachusetts District dated January 9, 1962, which is also attached), that "there is nothing to be gained administratively by the transfer of these matters to Boston," the United States District Court for the District of Massachusetts has informed the undersigned that all the cases arising out of this accident have been assigned to one judge, who is handling all such cases for purposes of proceedings prior to trial and will consider possibilities of severance of issues for trial, as well as consolidation for trial, at the appropriate time.[12] As pointed out in Kelly v. Greer, 295 F.2d 18, 21 (3rd Cir., 1961), even after a consolidation order has been entered, it "does not freeze the future conduct of the litigation."

(2) The conduct of as few trials as feasible on the issues of liability and culpability.

The purpose of the Federal Rules of Civil Procedure was to encourage consolidation wherever this was fair and possible. See Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir., 1947); United States v. Knauer, 149 F.2d 519 (7th Cir., 1945), aff'd 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946); cf. Walker v. Loop Fish & Oyster Co., 211 F.2d 777, 780–781 (5th Cir., 1954); Howey v. Yellow Cab Co., 181 F.2d 967, 973 (3rd Cir., 1950), aff'd sub. nom. United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). In the Howey case, supra, the court said at page 973:

"Surely the stricture of the Sherwood case * * *, would not serve to require second, separate trials with the United States as the sole defendant, the issue being one of contribution, for such second, separate trials would embrace the same evidence as that already received and would be conducted before the same judge."

Federal trial courts have consistently recognized the fairness and desirability of consolidating cases for trial, particularly on the issue of liability. See Weitort v. A. H. Bull & Company, 192 F.Supp. 165 (E.D.Pa.1961); Hassett v. Modern Maid Packers, Inc., 23 F.R.D. 661 (D. Md.1959); Polak v. Koninklijke Luchtvaart Maatschappij, etc., 19 F.R.D. 87 (S.D.N.Y.1956); and cases cited in those cases. In the Polak case, supra, the court said at page 88:

"The advantages of consolidating multiple claims arising from a single accident outweigh even the considerations requiring strict enforcement of the rules on jury demand. * * * (Citing case.) Recent experience with the trial of such consolidated claims in this court indicates that almost invariably the only evidence peculiar to each claim is that relating to damages. Most of

---

8. See note 8 on Page 430.

12. Paragraph 8 of the Lockwood Affidavit (Document No. 30 in C.A. 30078) refers to the normal progress of a case in the United States District Court for the District of Massachusetts, whereas the court

has informed the undersigned that this case is being treated as a protracted case and not "in the normal course." See Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R. D. 351 (1960).

the trial court's time is consumed by the trial issues common to all of the cases. Considerations of expense as well as the convenience of witnesses, litigants and the Court, and the expeditious dispatch of judicial business, impel consolidation under such circumstances."

In the Hassett case, supra, involving five actions arising out of one accident, the court said at page 664 of 23 F.R.D.:

"* * * it will save time for parties, witnesses, counsel and courts, to have the entire matter disposed of at one trial. * * *

"The five cases should be consolidated for trial under Rule 42(a), but, as permitted by Rule 42(b), the jury shall first hear the evidence on the issue of liability and decide that issue for all of the cases."

It is neither fair nor just that there should be a different liability result for some of these plaintiffs than there is for others. Transfers under 28 U.S.C.A. § 1404(a) have resulted from the desirability of consolidating the transferred cases for trial with other similar cases pending in the transferee District. See A/S Dampskibsselskabet Svendbord v. United States, 116 F.Supp. 603 (E.D.Tex. 1953), where the court said at page 606:

"However, a more important consideration, it would seem, is that all of the facts and circumstances necessary to determine the rights of the parties will have to be presented both there and here at different times, and it is possible that the two Courts could reach conflicting conclusions; whereas if the case filed here is transferred, it can be consolidated with those in the Southern District of New York and all rights determined in a single trial without the possibility of such a conflict."

See, also, Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 21, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); Cressman v. United Air Lines, 158 F.Supp. 404 (S.D.

N.Y.1958); Winsor v. United Air Lines, 153 F.Supp. 244 (E.D.N.Y.1957).

Recently, the United States Court of Appeals for the Second Circuit has emphasized the desirability of consolidation of separate actions involving common questions of law and fact for purposes of pre-trial and trial under the supervision of one judge or master. See MacAlister v. Guterma, supra. In Crosley Corporation v. Hazeltine Corporation, 122 F.2d 925 (3rd Cir., 1941), the United States Court of Appeals for the Third Circuit said at page 930:

"It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals. No party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction. * * * The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties."

(3) The District of Massachusetts is the only federal jurisdiction where all defendants can be served.

The defendants (particularly the United States of America and Eastern Air Lines, Inc.) emphasized at the argument that they wish to join the Massachusetts Port Authority (owner and operator of the Boston airport) as a third-party de-

fendant and service can only be obtained on that entity in the District of Massachusetts (see page 4 of Kreindler Affidavit, Document No. 12 in C.A. 29724). This court has consistently recognized that the ability to join a third-party defendant in the transferee forum is a consideration in favor of transfer. See Allied Petro Products Incorporated, etc. v. Maryland Casualty Company, E.D.Pa., 201 F.Supp. 694, and cases cited at pages 695, 696. The unfairness which can result from different results in separate trials of actions arising from the same accident is illustrated in cases such as Curtis v. A. Garcia Y. Cia, 272 F.2d 235 (3rd Cir., 1959), where differing records in two trials produced a liability result for defendant and third-party defendant which it is quite possible that neither fact finder would have reached if both actions had been considered at the same trial.

(4) Other reasons favoring transfer of the cases in the interest of justice.

In addition to the above factors favoring the transferee District as the only place where fair proceedings before trial and a fair trial for all parties on the issues of liability and culpability may be had, the following factors mentioned by the United States Supreme Court in Gulf Oil Corp. v. Gilbert (see second paragraph quoted in footnote 2, supra) favor trial in the transferee District:

(a) The litigation will be handled "at its origin," rather than in this court, the docket of which is more congested than that of the transferee District (see par. 7 of Wickenhaver Affidavit, being Exhibit B to Document No. 31).

(b) The trial of the issues of liability and culpability will be held "in a forum that is at home with the state law."

One of the principle arguments of the personal representative plaintiffs who op-pose the transfer is that they will be deprived of the benefits of the public policy embodied in the Pennsylvania Constitution (particularly Article I, Section 11, and Article III, Section 21, P.S.) if these cases are transferred. Cf. § 612 of Restatement of Conflicts of Law. This argument against transfer is rejected for these reasons, among others:

A. There is no reason to believe that a Federal Judge, sitting in Massachusetts, will not be just as able in selecting and interpreting the applicable law as such a judge sitting in Pennsylvania will be.

The Supreme Court of the United States has recently stated: "The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of the place of injury to the substantive rights of the parties." Richards v. United States, 369 U.S. 1, 82 S.Ct. 585 (1962).[13] In view of the possibility that the decision in the cases pending in the Pennsylvania State Courts referred to under B below may make moot the argument against application of the above-quoted rule in this case, it is not necessary to decide at this time such questions argued by counsel as the application to this situation of §§ 384, 391 (comment d), 412, 517 and 612 of the Restatement, Conflict of Laws, and as, when a case is transferred under 28 U.S.C.A. § 1404(a), does the transferee court determine the rights of the parties on the basis of the law that would have been applied in the District where the suit was originally filed. See Headrick v. Atchison, T. & S. F. Ry. Co., 182 F.2d 305, 309–310 (10th Cir., 1950); Gomez v. The SS. Dorothy, 183 F.Supp. 499, 512 (D.Puerto Rico 1959); Hargrove v. Louisville & Nashville Railroad Company, 153 F.Supp. 681, 684 (W.D.Ky.1957); Greve v. Gibraltar Enterprises, 85 F.Supp. 410, 414 (D.New Mex.1949);[14] and authorities cited in

13. It is noted that in referring to the rule of some states "to take into account the interests of the State having significant contact with the parties to the litigation," the court did not refer to any Pennsylvania or Massachusetts cases in footnote

26 of its opinion (see page 12 of 369 U.S., page 592 of 82 S.Ct.).

14. In this case, the court used this language at page 414 of 85 F.Supp.:
"It appears the rule should be that the legal rights of the parties are determined

those cases. The transferee court will be better able to pass on these questions, if necessary, after decision of the cases pending in the Pennsylvania State Courts mentioned in footnote 20 below.

B. Contention that Pennsylvania public policy prevents enforcement of the measure of recovery but accepts the right of action provided in the Massachusetts Wrongful Death Act should not be ruled upon at this time.

Relying on (1) a recent dictum of four out of seven justices of the New York Court of Appeals in Kilberg v. Northeast Air Lines, Inc., 9 N.Y.2d 34, 211 N.Y.S. 2d 133, 172 N.E.2d 526 (1961), to support the application of Article 3, § 21, of the Pennsylvania Constitution,[15] (2) an older Pennsylvania Supreme Court case [Thirteenth & Fifteenth St. Passenger Railway Co. v. Boudrou, 92 Pa. 475, 481–482 (1880)] to support the application of Article 1, § 11, of the Pennsylvania Constitution,[16] and (3) general language in Pennsylvania cases that foreign penal statutes will not be enforced in Pennsylvania courts,[17] the personal representative plaintiffs contend that they are entitled to recover compensatory damages without limit in these actions because of the alleged, strong Pennsylvania public policy opposed to the $20,000. limit in the Massachusetts Wrongful Death Act. Defendants argue that neither the Pennsylvania appellate court nor the Federal decisions have applied such a public policy to invalidate such foreign state limitations on recovery in the past. See, for example, Slater v. Mexican National R. R. Co., 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900 (1904) ; Knecht v. United States, 242 F.2d 929 (3rd Cir., 1957) ; Rennekamp v. Blair, 375 Pa. 620, 101 A.2d 669 (1954) ; cf. Hughes v. Pennsylvania Railroad Co., 202 Pa. 222, 228–229, 51 A. 990, 63 L.R.A. 513 (1902) ; and Quaker Worsted Mills Corp. v. Howard Trucking Corp., 131 Pa.Super. 1, 8–9, 198 A. 691 (1938).[18]

by the law of the state or district in which the cause originates. In other words, a change of venue affects the place of trial only."

15. Article 3, § 21, provides:
" * * * in no other cases shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted."

Article 1, § 16, of the New York Constitution, relied on in the Kilberg case, supra, provides: "The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitations." It is noted that in view of the reasoning used to support the majority's dictum in the Kilberg case, the same result might not be applicable to defendants such as Lockheed and General Motors, which are not common carriers who sold tickets in the forum to domiciliaries or residents of the forum.

16. Article 1, § 11, of this Constitution provides:
"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

17. Nesbitt v. Clark, 272 Pa. 161, 116 A. 404, 25 A.L.R. 1406 (1922) ; Commercial Nat. Bank v. Kirk, 222 Pa. 567, 71 A. 1085 (1909). Although language in Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 132, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956), is relied on to establish that the Massachusetts Wrongful Death Act is penal, the Pennsylvania appellate courts have recognized that the words "penal" and "penalty" have different shades of meaning. See Commonwealth v. Musser Forests, Inc., 394 Pa. 205, 146 A.2d 714 (1958) ; Laughlin et al. v. Baltalden, Inc., 191 Pa.Super. 611, 617–618, 159 A.2d 26 (1960) ; cf. Ward v. Rice, 29 F.Supp. 714 (E.D.Pa.1939). The Pennsylvania appellate courts have also recognized that there is a strong public policy in enforcing rights and duties validly created by foreign law. See Personal Finance Co. of New York v. General Finance Co., 133 Pa.Super. 582, 585–586, 3 A.2d 174 (1938).

18. In the Hughes case, the court used this language at pp. 228–229 of 202 Pa., at p. 992 of 51 A.:
"Where a contract containing a stipulation limiting liability for negligence is made in one state, but with a view to its

Also, defendants contend that the full faith and credit clause requires Pennsylvania courts to follow all the terms of the Massachusetts Wrongful Death Act, relying on First Nat. Bank of Chicago v. United Air Lines, 342 U.S. 396, 400–401, 72 S.Ct. 421, 96 L.Ed. 441 (1952); Order of United Commercial Travelers v. Wolfe, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947); Bradford Electric Co. v. Clapper, 286 U.S. 145, 160, 52 S.Ct. 571, 76 L.Ed. 1026 (1932). Finally, defendants argue that if this Massachusetts Act may not be applied in these cases, there can be no recovery at all, since the plaintiffs have no remedy.

However, in accordance with the repeated statements of the Supreme Court of the United States that District Courts should abstain from deciding issues involving the Constitution and public policy

of a state so as to afford the state courts a reasonable opportunity to decide such matters,[19] the determination of the law governing the measure of damages in these actions should be postponed until the trial on the issues of liability and culpability has been completed. Meanwhile, a Pennsylvania appellate court decision may become available to enlighten us on the public policy of this Commonwealth in this situation, since there are two cases pending in the state courts in which there will be an opportunity for the foregoing contention to be submitted to the Pennsylvania courts.[20]

Abstention of decision on this aspect of the case at this time will also prevent a premature decision on the Constitutional issue of the application of the full faith and credit clause.[21] Cf. Railroad Com-

performance by transportation through or into one or more other states, we see no reason why it should not be construed in accordance with the law of the state where its negligent breach, causing injury, occurs. If such a contract comes under construction in a state like Pennsylvania, whose policy prohibits such exemption, and the injury has occurred in a state where the contract is valid, the stipulation will be enforced, as in Forepaugh v. Railroad Co., [128 Pa. 217, 18 A. 503, 5 L.R.A. 508] and in Fairchild v. Railroad Co., [148 Pa. 527, 24 A. 79]. But if the injury has taken place within its limits, it will declare the contract null and void, as in Burnett v. Railroad Co., [176 Pa. 45, 34 A. 972]. In the Fairchild Case, as the injury occurred in Maryland, this court enforced the law of that state. If the injury to the horse had been delayed until in the course of the journey it had reached Pennsylvania, our own law of public policy would have controlled."
This approach seems different than the New York law, as exemplified in the Conklin case, relied on in the majority opinion in Kilberg at page 135 of 211 N.Y.S.2d, at page 528 of 172 N.E.2d.

19. See Harrison v. N. A. A. C. P., 360 U.S. 167, 176–178, 79 S.Ct. 1025, 3 L.Ed. 2d 1152 (1959); Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); and cases cited in Note, "Abstention: An Exercise in Federalism, 108 U. of Pa.Law Rev. 2226 (1959). In the Thibodaux case, the court said at page 27, 79 S.Ct.

at page 1072: "We have increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law." In the Harrison case, the court said at page 176 of 360 U.S., at page 1029 of 79 S.Ct.:
"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a 'scrupulous regard for the rightful independence of state governments * * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, [52 S.Ct. 217, 219, 76 L.Ed. 477] as their 'contribution * * in furthering the harmonious relation between state and federal authority. * * *' "

20. It is noted that two actions previously pending in this court (C.A. Nos. 30390 and 30391) have been remanded to the state court and are now pending there (Court of Common Pleas No. 4 of Philadelphia County, Sept. Term 1961, No. 237, and Court of Common Pleas No. 6 of Philadelphia County, Sept. Term 1961, No. 238).

21. Also, it is noted that the application of the Full Faith & Credit Clause (article 4, § 1) to the dictum of the majority in the Kilberg case is raised by an appeal now pending in the United States Court of Appeals for the Second Circuit

mission of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Finally, it should be noted that the considerations stated in 28 U.S.C.A. § 1404(a) require the transfer of the actions brought against the Government for these reasons, among others:

(a) The basis of the claims against the Government makes it only fair that it be permitted to bring in as a third-party defendant the Massachusetts Port Authority, as operator of the airport.

(b) The District of Massachusetts is the only District where all the suits against the Government may be brought (see footnote 8 above);

(c) The Massachusetts Federal Court is most familiar with "the whole law of the State where the act or omission occurred" which must be applied in the suits against the Government, see Richards v. United States, supra, at page 1 of 369 U.S., at page 585 of 82 S.Ct.; and

(d) There is no contention that the above-mentioned public policy contained in the Pennsylvania Constitution applies to these Government suits, which are not governed by the measure of damages in the Massachusetts Wrongful Death Act.

The many factors dictating transfer of the cases against the Government (19) [22] must be considered as a factor favoring transfer of the other cases pending in this District, so that all cases arising from this accident may be treated uniformly by the court which must dispose of the great majority of such cases.

Plaintiffs in C.A. 30078, C.A. 30346 and C.A. 30284 contend that these wrongful death actions may not be transferred under 28 U.S.C.A. § 1404(a) since they were not appointed as personal representatives in Massachusetts and, hence, could not have brought the actions there,[23] relying on Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). However, the Supreme Judicial Court of Massachusetts has held that a foreign personal representative may bring a suit under the wrongful death act and later qualify in the forum,[24] even though the Statute of Limitations has run at the time of such later qualification,[25] in Boudreau v. New England Transportation Company, 315 Mass. 423, 426–427, 53 N.E.2d 92, 94, where the court said:

"Even apart from any admission under G.L. (Ter.Ed.) c. 231, § 30, this is not a case where there was no plaintiff in existence when the action was brought. The plaintiff was a live person in whatever capacity she was acting or purporting to act. The question was whether she had the capacity to maintain the action. She could assert that she had and could bring the action and try the issue of her competency to maintain it. The action was therefore not a mere nullity but was from the first a genuine lawsuit and an adequate basis for an amendment alleging an appointment in the State of the forum when such appointment was secured."

from Pearson, etc. v. Northeast Airlines, Inc., 201 F.Supp. 45, in the U. S. District Court for the Southern District of New York, Opinion and Order filed 11/15/61. Counsel have informed the court that the New York District Court reached a contrary decision to Pearson, supra, in Trauth v. Northeast Airlines, Inc., (S.D.N.Y., C.A. 149–256, 1961), where a New Jersey citizen was plaintiff, on the ground that New Jersey's policy differed from that of New York. An excerpt from the transcript of the court's statements in Trauth, supra, is appended to the attached letter of 1/9/62 from counsel for General Motors.

22. Civil Actions Nos. 28764, 28788, 28789, 29100, 29161, 29162, 29275, 29616, 29901, 30230, 30257, 30258, 30263, 30302, 30303, 30304, 30305, 30306 and 30343.

23. See Boutillier v. Wesinger, 322 Mass. 495, 496, 78 N.E.2d 195 (1948).

24. See Mass.Gen.Laws, Ch. 193, §§ 1 & 2, Ch. 194, § 5, Ch. 195, § 8, Mass.Ann. Laws, Ch. 204, § 3.

25. Cf. Brennan v. Rooney, 139 F.Supp. 484, 486–487 (E.D.Pa.1956).

Although this is a close question, this contention of plaintiffs is rejected for these reasons:

A. The District of Massachusetts is a District where Congress designated litigation of this type might be brought.

The appropriate Congressional Title of the United States Code (Title 28 covering "Judiciary and Judicial Procedure") provides in Chapter 85 (District Courts; Jurisdiction) at Section 1332(a) and in Chapter 87 (District Courts; Venue) at Sections 1391(a) and (c) and 1402(b) for institution of these actions in the District of Massachusetts.

In determining where a suit might have been brought, the dissenting opinion in Paramount Pictures v. Rodney, 186 F.2d 111, 116 (3rd Cir. 1951), which was quoted with approval in Hoffman v. Blaski, supra, 363 U.S. at 343, 80 S.Ct. at 1089, states:

"The district judge * * * had to decide whether the Northern District of Texas was a place where the suits 'might have been brought'. A reasonable and obvious way of determining this was to see whether Congress in some other statute had designated the places where litigation of this sort might be brought.

\* \* \*

"This background suggests that proper venue in more than one forum is the limiting context of the Code revision and that within this context Section 1404(a) substitutes a broad power of transfer for a more restricted pre-existing power of dismissal. Plaintiffs are prevented from abusing their normal privilege of choice among districts of proper venue. At the same time, courts are directed to respect the legislative enumeration of places which Congress has deemed appropriate for the trial of various types of litigation." (pp. 116 and 118).

B. A "common-sense approach" in interpreting Section 1404(a) of Title 28 to accomplish its purposes requires a construction that these cases "might have been brought" in the District of Massachusetts. See Continental Grain Co. v. Barge FBL–585, supra.

For the reasons stated above, it is "in the interest of justice" and "for the convenience of * * * witnesses" that these actions be transferred to the District of Massachusetts. Under such circumstances, legal fictions such as the state which has authorized a personal representative to act should not be a basis for rejecting the use of 28 U.S.C.A. § 1404(a). See Continental Grain Co. v. Barge FBL–585, supra, 364 U.S. at 22–24, 80 S.Ct. at 1472, 1473. In distinguishing Hoffman v. Blaski, supra, the court said at page 22 of 364 U.S., at page 1472 of 80 S.Ct. of the Barge FBL–585 case:

"Those cases involved transfers in which the plaintiffs filing the suits would have had no right whatever to proceed orginally against the defendants on the 'civil actions' in the District Courts to which transfer was sought without the defendants' consent. But in this case there was admittedly a right on the part of the grain company to subject the owner of the barge, with or without its consent, to a 'civil action' in Memphis at the time the New Orleans action was brought."

In applying 28 U.S.C.A. § 1404(a), courts do not consider all the defenses which might have been, or be, raised in the transferee forum and decide whether an action might have been successfully brought there.[26] See Greve v. Gibraltar Enterprises, supra, 85 F.Supp. at 412–413; cf. Ackert v. Pelt Bryan, 299 F.2d 65, (2nd Cir. 1962).

---

26. It is noted that "It is not necessary to aver the capacity of a party to sue or * * * the authority of a party to sue * * * in a representative capacity * * *" but such matters must be raised "by specific negative averment * * *." See F.R.Civ.P. 9(a), 28 U.S.C.A.

The defendants, by requesting these transfers, will be estopped from objecting to the capacity of the personal representative plaintiffs to proceed in these actions. See Greve v. Gibraltar Enterprises, supra, 85 F.Supp. at 414.[27]

---

27. There are attached to this opinion letters from counsel dated January 9, January 11, January 12 and February 14 with enclosures (including copy of letter of January 9, 1962, from the Clerk of the U. S. District Court for the District of Massachusetts, which was enclosed with the letter of January 11).