Sidney W. **POPKIN**

v.

**EASTERN AIR LINES, INC., Lockheed
Aircraft Corp., and General Motors Cor-
poration (and related cases).**

Civ. A. Nos. 28664, 28741, 28762–28764,
28788, 28789, 29099, 29100, 29159–29162,
29274, 29275, 29615, 29616, 29724, 29768,
29881–29884, 29901, 30078, 30079, 30200,
30230, 30258, 30260, 30263, 30266, 30284,
30288, 30289, 30301, 30302, 30305, 30306,
30343, 30344, 30346, 321, 323, 325, 327,
329, 375 of 1961 in Admiralty.

United States District Court

E. D. Pennsylvania.
March 25, 1966.

See also D.C., 236 F.Supp. 645.

Freedman, Borowsky & Lorry, by Milton M. Borowsky, Philadelphia, Pa., for plaintiffs in Civ. A. Nos. 28664, 29881, 29882, 29883, 29884, 29901, 30258, 30260, 30301, 30302, 30305, 30306, 30343, 30344, and Nos. 321, 323, 327, 329 and 375 of 1961 in Admiralty.

Abram P. Piwosky, Philadelphia, Pa., and Lee S. Kreindler, New York City, for plaintiffs in Civ. A. Nos. 29724, 30288 and 30289.

Morgan, Lewis & Bockius, by Ralph Earle, II, John R. McConnell, Philadelphia, Pa., and O. Jacob Tallman, (Allentown, Pa.) for plaintiffs in Civ. A. Nos. 30078, 30079, 30284 and 30346.

Krusen, Evans & Byrne, by Thomas E. Byrne, Jr., Philadelphia, Pa., for plaintiffs in Civ. A. No. 29768.

Richter, Lord & Cavanaugh, by B. Nathaniel Richter, Philadelphia, Pa., for plaintiffs in Civ. A. Nos. 28741, 28762, 28763, 28764, 28788, 28789, 29099, 29100, 29159, 29160, 29161, 29162, 29274, 29275, 29615, 29616, 30200, 30230, 30263, 30266.

Rawle & Henderson, by J. Grant McCabe, III, Philadelphia, Pa., for defendant Eastern Air Lines, Inc.

Montgomery, McCracken, Walker & Rhoads, by Sidney L. Wickenhaver, Philadelphia, Pa., for defendant Lockheed Aircraft Corp.

Dechert, Price and Rhoads, by Owen B. Rhoads, Philadelphia, Pa., for defendant General Motors Corp.

Drew J. T. O'Keefe, Philadelphia, Pa., and Wallace Maloney, Dept. of Justice, Washington, D. C., for United States of America.

WOOD, District Judge.

On October 4, 1960, an Electra airplane on a commercial flight from Boston to Philadelphia crashed into Boston Harbor shortly after take-off from Logan Airport. The airliner was owned and operated by Eastern Air Lines, Inc. and had been designed by Lockheed Aircraft Corp. which also had built the airframe. The propulsion engines were designed and built by General Motors Corp. The United States had supervised the licensing of the Electra for commercial use and controlled various aspects of the plane's last flight. All of the parties mentioned are defendants in some of these cases in some form.

As a result of the accident, fifty-five actions were brought in the Eastern District of Pennsylvania, of which forty-eight are still pending here [1] and over one hundred actions were commenced in the United States District Court for the

---

[1] From Eastern's brief, it appears that of the 48 suits now pending, 5 are civil actions for personal injuries brought by 3 passengers who survived the crash. The remaining cases which arise from the deaths of 23 passengers consist of 3 civil actions against Eastern alone; 6 in admiralty against Eastern, General Motors and Lockheed, 17 civil actions against Eastern, General Motors and Lockheed, 14 civil actions against the United States wherein Eastern has been joined as third-party defendant and 3 civil actions against Eastern, General Motors, Lockheed and the United States. There are presently pending motions to bring in third-party defendants in a great many of these cases.

District of Massachusetts. The record in these cases indicates that the primary basis for liability on which plaintiffs will rely is alleged fault of defendants resulting in bird ingestion by the turbo-prop engines of the plane involved in this accident. At this time, because of the paucity of discovery, we have no idea what facts either side will rely upon to prove his case.

Defendants filed motions under 28 U.S.C. § 1404(a) [2] to transfer these cases to the District of Massachusetts, which were considered and granted by Judge Francis L. Van Dusen of this court. Popkin v. Eastern Air Lines, Inc., 204 F. Supp. 426 (E.D.Pa.1962). Plaintiffs thereafter obtained a Writ of Mandamus in the Court of Appeals on the ground that as the fiduciary plaintiffs had not qualified under Massachusetts law, the District of Massachusetts was not a court in which the actions "might have been brought." Barrack v. Van Dusen, 309 F.2d 953 (3rd Cir. 1963). The Supreme Court of the United States reversed the Court of Appeals and remanded to the district court holding that section 1404 (a) must be so interpreted that the transferee district court, after a change of venue, is generally bound to apply the law of the state of the transferor and that the district court erred in ignoring several factors which stem from this conclusion in determining whether or not to grant the motions to transfer. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). The case assumed a rather narrow interpretation of the transfer statute by regarding it merely as "federal judicial housekeeping" that authorizes only "a change of courtrooms." Van Dusen v. Barrack, 376 U.S. at 636-637, 84 S.Ct. 805.

Pursuant to the Supreme Court's directions, Judge Van Dusen scheduled additional arguments but before actual hearing, the Court of Appeals suggested that he remove himself from the cases after the plaintiffs had applied for a writ of mandamus seeking to disqualify him from sitting further in these cases. Rapp v. Van Dusen, 350 F.2d 806 (3rd Cir. 1965). The plaintiffs had alleged that he was biased, in fact or in appearance, because of his associations with defense counsel in the course of the prior mandamus action. Upon reassignment of these cases to us, we scheduled a hearing to consider the future course of this litigation.

The defendants renewed their motions to transfer these actions to the United States District Court for the District of Massachusetts, pursuant to 28 U.S.C. § 1404(a). In support of their motions, defendants state essentially that a transfer would enable consolidation of these cases with the case in Boston, would be in the interests of many eyewitnesses and experts who would be saved a dual trial, would relieve a congested docket here and free us from duplicating Judge Julian's decisions and enable them to implead the Massachusetts Port Authority.

▮ Under Section 1404(a) it is clear that the burden is upon the movant to show by a preponderance of the evidence that trial will more conveniently proceed and the ends of justice will be better served by a transfer. The Supreme Court in Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955) established that the discretion to be exercised in transferring a case was broader than that exercised under forum non conveniens. Jurgelis v. Southern Motors Express, 169 F.Supp. 345 (E.D. Pa.1959). However, moving defendants are still required to show a strong balance of inconvenience in their favor before a transfer will be granted. Calva v. American Air Lines, Inc., 177 F.Supp. 238 (D.Minn.1959). Plaintiffs' right to choose a forum is a very relevant consideration in weighing the disadvantages to defendants, especially when the plaintiffs are residents of the transferor forum. Cressman v. United Air Lines, 158 F.Supp. 404 (S.D.N.Y. 1958). With these considerations in mind, we may now pro-

---

2. 28 U.S.C. § 1404(a) reads:
 "For the convenience of parties and witnesses, in the interest of justice, a dis-trict court may transfer any civil action to any other district or division where it might have been brought."

ceed to an analysis of the relevant factors.[3]

The starting point in ruling on the transfer motions is the position taken by the United States Supreme Court in Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) where they suggested certain criteria which they "concluded * * * that the District Court ignored * * * which might well have been more clearly appraised and might have been considered controlling * * *." The suggestions of the Supreme Court were as follows:

1. "Since * * * Pennsylvania laws would govern the trial of the transferred cases, insofar as those laws may be significantly different from the laws governing the cases already pending in Massachusetts, the feasibility of consolidation and the benefits therefrom may be substantially altered.[4]

2. "[I]f the transferred actions would not be subject to the Massachusetts culpability and damage limitation provisions, then the plaintiffs might find a relatively greater need for compensatory damage witnesses to testify with regard to the economic losses suffered by individuals. * * *

3. "[T]o the extent that Pennsylvania laws are difficult or unclear and might not defer to Massachusetts laws, it may be advantageous to retain the actions in Pennsylvania where the judges possess a more ready familiarity with the local laws." Van Dusen v. Barrack, 376 U.S. at 643–647, 84 S.Ct. at 823.

The Court, however, specifically refrained from commenting on the criteria relied upon by the District Court.

Generally, we can hardly disagree with Judge Van Dusen's exhaustive and well-considered opinion concluding that a transfer was justified as of April 6, 1962.

However, because of the *Barrack* and *Griffith* decisions of which he did not have advantage and because of circumstances occurring after 1962, we conclude at this time that these cases should not be transferred to the District Court for the District of Massachusetts. We will add only a brief note to the comments made by Judge Van Dusen relative to those factors not specifically treated by the *Barrack* opinion to make clear the weight we ascribe to each factor.

Those factors which Judge Van Dusen felt justified a transfer were as follows:

1. Massachusetts will be more convenient for the known witnesses on the issue of liability.

2. Massachusetts will be as convenient as Philadelphia for all other persons who are likely to be liability witnesses.

3. Once the issues of liability have been determined, relatively few of a large group of cases such as these go to a trial on the damage issues.

4. Consolidation of all cases for pretrial proceedings will result in more fair and orderly trials for all litigants and will save needless time and expense for the public.

5. Consolidation in one district will result in as few trials as feasible on the issues of liability and will reduce the risks of inconsistent results.

6. Massachusetts is the only district in which all defendants, including the Massachusetts Port Authority, may be brought before the court.

7. The trial of the issues of liability will be held in a forum at home with the applicable law and where the docket is less congested.

8. Massachusetts is the only district in which all actions against the United States may be maintained.

9. There will be no duplication of pretrial procedures.

---

3. We have assumed that a general ruling would cover all of the cases, although the equities may vary in specific cases.

4. Since the *Barrack* decision, the Pennsylvania Supreme Court has discarded lex loci delicti as the general rule in the area of conflicts of law in favor of a more flexible approach. Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964).

We do not feel that we can adequately determine just what weight Judge Van Dusen gave to each factor and must therefore make an independent judgment not as to each factor but whether all the factors are now sufficient to warrant a transfer taking into consideration that several new criteria have been interposed. We simply do not know what Judge Van Dusen would have done in the light of the *Barrack* case.

Aside from the likelihood then of consolidation of the Philadelphia cases with the Boston cases for both pre-trial proceedings and for trial and resultant benefits, Judge Van Dusen relied mainly on two factors which are still relevant, the fact that the District Court in Boston was the only federal forum where the Massachusetts Port Authority could be brought in as a third-party defendant and the convenience of liability witnesses.

■ The ability to join third parties in a transferee forum, who may have caused the accident by their negligence is of course an important factor in movant's favor, when the same third parties cannot be joined in the transferor forum. *Allied Petro-Products, Inc. v. Maryland Cas. Co.*, 201 F.Supp. 694 (E.D.Pa.1961). The factor assumes less weight, however, when the proofs required by plaintiff's case are not the same as those required by defendant's, defendant is not entitled to a right over when plaintiff proves his case and where the third party has already been impleaded in the transferee forum in similar cases. The only advantage to a transfer as regards an impleader would be that all the parties would be before the same court.

The second major consideration, the convenience of liability and certain damage witnesses, is one with several facets. First, defendants contend that a great many witnesses reside in or near Boston and will be inconvenienced by a trial in Philadelphia and secondly that both they and all other witnesses will be inconvenienced by two trials. They also contend, incidentally, that the various large corporations involved in this case will be hampered by the absence of personnel who are called as witnesses in two different trials.

The argument as to two different trials assumes that these cases will definitely be consolidated if transferred to Boston. We will say simply at this point that we do not believe that the Philadelphia cases can or will be consolidated with those of Boston and reserve elaboration until later in the opinion.

■ As to inconvenience to liability witnesses, defendants must show more than their assertion that a certain number of witnesses will be inconvenienced if the trial were held in Philadelphia. *Peyser v. General Motors Corp.*, 158 F. Supp. 526 (S.D.N.Y.1958). They must show the materiality of the matter to which these witnesses will testify and some justification that they will probably be called to the stand. General Motors argued that there were at least eighty-eight witnesses to liability in Massachusetts. We have no idea to what these witnesses will testify. It was suggested by defendants that there were at least 41 eyewitnesses in Boston who could testify as to the flight of the plane. To this we reply, that since the facts of how the accident occurred do not seem to be greatly in dispute, we do not see the possibility that even a small percentage of these witnesses are necessary, if any at all. Beyond these eyewitnesses and several experts on birds who examined the dead bodies of the birds, defendants have not revealed the necessity of 88 liability witnesses.[5] Thus, we ascribe some weight to the inconvenience of some unknown number of witnesses, but not an overwhelming amount.

The main contention of the defendants and one of the major criteria singled out by the Supreme Court for further consideration is the possibility of consolidation of these cases with those in Boston. We simply do not know what Judge

---

5. Of course many expert witnesses and personnel of the defendants will be required to appear at the trial, but we do not know where they reside.

Julian, who has been assigned the cases in Boston, would do if we granted the motions to transfer. We have no idea whether he would consolidate these cases merely on the issue of liability, whether he would determine that two trials are necessary or whether he would try all the cases together on liability and damages. We have concluded that he would not consolidate. A rather narrow possibility of only one trial is not enough combined with the other factors to cause us to exercise our discretion to transfer.

At this time, we feel that consolidation will not result for the following reasons:

1. The applicable law in these cases as to damages will in all likelihood differ from those in Boston.[6]

2. The applicable law as to liability as against everyone but Eastern may differ.[7]

3. Pennsylvania law as to liability of a common carrier and its duties to a passenger may apply to these cases and may vary substantially from that in Massachusetts.[8]

 4. Quasi-procedural matters such as the law of presumptions, questions of evidence, burden of proof and sufficiency of evidence for the jury probably under the aegis of the *Barrack* rule would have to be referred by the transferee forum to the rules of the transferor forum. We do not know if these rules substantially vary in the two forums.[9]

5. Judge Julian in a consolidated and protracted case would be faced with the probability of objections by both sides in the Philadelphia cases that the applicable law is different from that in the District of Massachusetts.

6. Judge Julian would in order to consolidate these cases with those in Boston be forced to delay the trial in Boston for an indefinite time and further delay the plaintiffs. He would be faced with the task of co-ordinating these cases for pre-trial procedures, determining a new method of trial and giving plaintiffs an opportunity to complete discovery which is almost completed in Boston.

7. Since the ultimate issue in Massachusetts death cases is the culpability of defendants, defendant could introduce evidence in a consolidated trial which would not be relevant in Pennsylvania death cases, thereby prejudicing plaintiffs.

 We obviously have no power to compel consolidation of these cases with those in Boston. Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267, 273 (3rd Cir. 1962). This is a matter in the discretion of the District Court of Massachusetts, and we have no indications that it would consolidate. We have no power further to order that District how to try these cases. Moreover, the First Circuit courts may very well take the position that the same jury must try the case both as to liability and damages which of course would result in substantial prejudice to plaintiffs in these cases who can recover substantial compensatory dam-

---

6. Compare Mass.Laws Ch. 229 § 2 which allows damages in death cases based on the degree of culpability with Pa.Stat. tit. 20 §§ 320.601 and 320.603 and Pa. Stat. tit. 12 §§ 1601–1602 which generally allows damages based on the amount of earnings of decedent, and other damages recoverable if the decedent had survived to bring a personal injury action, in the light of the *Griffith* case. There is no damage limitation in Pennsylvania while damages in Massachusetts are limited to $20,000. See Macchiaroli v. Howell, 294 Mass. 144, 200 N.E. 905 (1936) where the court stated:

> "The damages thus recoverable are in the main penal or punitive. They are designed to punish one guilty of causing the loss of a human life through negligence. They are assessed with reference to the degree of culpability of the defendant and not by way of compensation for any loss sustained by the beneficiaries of the action. * * *"

The approach to trying a case of this nature hardly seems to resemble a case similar to an ordinary negligence action.

7. *Griffith* is still a mystery to us.

8. Neither party has suggested one conclusion or the other.

9. "* * * 1404(a) was not designed to * * * defeat the state-law advantages that might accrue from the exercise of this venue privilege * * *." 376 U.S. at 635, 84 S.Ct. at 819, 11 L.Ed.2d 945.

**250**

ages in wrongful death cases. United Air Lines, Inc. v. Wiener, 286 F.2d 302 (9th Cir. 1961); cert. den. 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384. Boston plaintiffs are limited to a recovery of $20,000 and may possibly fail to recover that sum. Frankly, we do not see a great advantage to consolidation even on the issues of liability because of the number and reputation of plaintiffs' counsel in Philadelphia.

*Barrack* suggested reconsideration also in light of the fact that were the Pennsylvania law of compensatory damages to apply, plaintiffs would be more dependent on Pennsylvania witnesses. In the wake of *Griffith*, there is little doubt that as least as regards Eastern,[10] plaintiffs will be allowed to recover compensatory damages. Considering that there are presently over 20 decedents' estates involved in this mass litigation in Philadelphia, it is unnecessary for plaintiffs to show that they will be heavily dependent on a great number of local witnesses to show damages.[11]

Defendants contend that generally such a large number of cases do not go to trial on the question of damages. While this may be so, it does not indicate that all of these cases will not go to trial. Moreover, to use the same argument against defendants, it seems just as likely that once a verdict is reached in Boston as to those cases, these cases will be settled without a trial, thus completely undermining the position of the defendants.

The last point which the Supreme Court considered relevant was the state of doubt as to the conflicts rules of Pennsylvania and the applicable substantive law. First, they suggested that a Pennsylvania federal judge would be better able to untangle problems in conflicts of law and secondly that the chosen forum should be at home with the applicable substan-

tive law. Both facets fall in favor of plaintiffs at this time. It is still unclear what effect *Griffith* has on the instant litigation. The rule enunciated in *Griffith* is merely "the beginning of the development of a workable, fair and flexible approach to choice of law which will become more certain as it is tested and further refined when applied to specific cases before our courts." 416 Pa. at 22, 203 A.2d at 806.

Defendant's point that these cases should be transferred to Massachusetts because there has been extensive discovery conducted there while there has been little in this District simply fails to meet the issue. Judge Julian has no more power to limit these plaintiffs in discovery than we have. In fact, plaintiffs have generally agreed that they will make extensive use of the Boston discovery and that not a great deal more will be required. Moreover, as it seems that a trial will be held in Boston before one is possible here, we will have the benefit of rulings made by Judge Julian and of stipulations by counsel which will greatly facilitate a trial here if one is necessary.

Consolidation as a factor in transfer has been considered by several courts and has been rejected as one strong enough to compel transfer by itself, even when consolidation was considered more likely than in this case. See Cressman v. United Air Lines, 158 F.Supp. 404, 407 (S.D.N.Y.1958), Schindelheim v. Braniff Airways, Inc., 202 F.Supp. 313 (S.D.N.Y. 1962), and United Air Lines, Inc. v. United States, 192 F.Supp. 796 (D.Del. 1961). The motions granted for the purposes of consolidation in the electrical anti-trust cases present an entirely different problem. These cases involved a series of cases involving thousands of claims and spread throughout the entire federal system. A coordinated program

10. The defendant in *Griffith* was of course an airlines in a very similar position to Eastern. The Supreme Court of Pennsylvania therein allowed full compensatory damages in accord with Pennsylvania law although the place of the accident severely limited recovery.

11. The necessary witnesses if all of these cases went to trial would probably approach 100 in view of the fact that most of the decedents had substantial salaries.

was essential to prevent a complete deluge of the federal court. See I-T-E Circuit Breaker Co. v. Becker, 343 F.2d 361 (8th Cir. 1965).

A motion to transfer is not susceptible to an exact weighing. The relevant factors remain too vague in application and the value to which they are entitled is at best a calculated guess. The court must make a particularized judgment which may in the long run prove to be erroneous. However, since District Judges have not been endowed with Solomonic wisdom, we must be content with an inexact balancing.

In summary, the defendants allege that a transfer is warranted because of the inconvenience to liability witnesses, because of the possibility of a consolidation and because of inability in this forum to bring in the Massachusetts Port Authority among other factors, including a uniform decision. All of these factors we believe are very relevant. However, in this case we must conclude that they are not sufficient to overcome the fact that plaintiffs will rely heavily on compensatory damage witnesses, that the controlling conflicts law will be that of this state, that the controlling procedure will probably be that of this forum and that the plaintiffs are residents of this forum. The latter circumstance itself coupled with less inconvenience than present in this case has been enough to warrant courts in refusing to transfer similar cases.[12] We have considered all of the points raised by the arguments of defendants and believe that we have weighed them properly in determining not to transfer.

### ORDER

And now, this 25th day of March, 1966, it is ordered that any previous order to transfer these cases to the District Court of Massachusetts is vacated, and it is further ordered that all motions to transfer these cases to the District Court of Massachusetts are denied.

---

12. Compare Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309 (S.D.N.Y.1962) with Schindelheim v. Braniff Airways, Inc., 202 F.Supp. 313 (S.D.N.Y.1962) both decided by Judge Frederick van Pelt Bryan,