James L. **KELLUM**

v.

**UNITED STATES LINES, INC.**

Civ. A. No. 73–854.

United States District Court,
E. D. Pennsylvania.

Nov. 9, 1973.

Arnold J. Wolf, Freedman, Borowsky & Lorry, Philadelphia, for plaintiff.

Carl D. Buchholz, III, Rawle & Henderson, Philadelphia, for defendant.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

### Introduction

Plaintiff instituted this action on April 12, 1973, seeking one million dollars in damages for his claim under 46 U.S.C. § 688 (Jones Act) and for maintenance and cure and wages.

Thereafter, on June 22, 1973, defendant filed the motion, now before this Court, to transfer this action from this district to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1404 (a):

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

For the reasons which appear hereinafter, we have decided to grant defendant's motion "for the convenience of parties and witnesses" and "in the interest of justice" [1].

### Facts

Plaintiff, employed as a crew member of the vessel, "SS American Challenger", which is owned and operated by the defendant, was injured on February 2,

---

1. There is no contention that this action could not have been brought in The Eastern District of North Carolina.

1973, on board while in Southport (or Suny Point) harbor in North Carolina. His right hand was caught in a winch [2], which was operated by employees of Ryan Stevedoring Company (Ryan Co.), who were discharging the ship. As a result, the plaintiff's right thumb was amputated and surgery was required. Subsequently, plaintiff developed intercranial hemorrhaging requiring a craniotomy. The plaintiff now suffers from nerve and brain damage, allegedly all as a consequence of his original accident [3].

Plaintiff is a citizen and resident of the state of North Carolina. Defendant is incorporated under the laws of Delaware and is subject to service of process in the Eastern District of North Carolina. However, defendant is also subject to service of process and has offices in Philadelphia. The United States District Court for the Eastern District of North Carolina sits in Wilmington, North Carolina.

The defendant cannot effect jurisdiction over the Ryan Co. in The Eastern District of Pennsylvania and join it as a third party defendant without transfer. Thus, defendant avers that if it is liable, an indemnity action against Ryan Co. will be required in The Eastern District of North Carolina.

The "SS American Challenger" will not be coming to Philadelphia in the foreseeable future and has not been here since March of 1969. However, the defendants have not alleged where the ship will be in the foreseeable future nor that it will be any where near Wilmington, N. C.

Whether the plaintiff's brain injury is related to the accident of February 21, 1973, will be one of the major issues at the trial.

The accident has been investigated by the attorneys for the defendant from Wilmington, North Carolina [4]. Immediately after the accident, plaintiff was taken to Dosher Memorial Hospital in Southport, North Carolina. Thereafter, plaintiff was transferred to New Hanover Memorial Hospital in New Hanover, N. C. until March 8, 1973, and, while there, was under the care of Dr. Charles

---

2. In addition to the sworn statement to this effect, the defendant has presented, as an exhibit, a United Coast Guard report on the accident. The report states that the plaintiff was greasing a winch when the winch driver started up the winch and plaintiff's hand was caught by the protruding ends of the winch runner fastener at the winch drum. The result was an injured right hand with badly torn, severed fingers.

3. The exact date upon which the brain complications developed is not mentioned in the affidavits. However, it is implied that it arose rapidly; in which case, it is probable that the plaintiff was in the care of North Carolina doctors when it arose. Indeed, at oral argument, counsel for plaintiff stated that, in his contact with the plaintiff's family, they had said the treatment received in North Carolina was not satisfactory because the doctors told them there was no chance for rehabilitation. Counsel informed them that the University of Pennsylvania Hospital had the finest rehabilitation services on the East Coast and the family said the plaintiff would come to Philadelphia for treatment. This apparently also accounts for the stated intention of the plaintiff, sworn to by counsel, to come to Philadelphia for rehabilitative treatment. Thus, the pleadings indicate that the serious brain injury in question was present when he was under the care of North Carolina doctors. This conclusion is buttressed by the statements, albeit unsworn, of counsel.

4. In addition to this sworn statement, in the defendant's affidavit, he states, in his brief, that these same attorneys have conducted extensive investigation and discovery in Wilmington; and that plaintiff's accident was investigated by officials of the U.S. Army whose live testimony would be very helpful. However, no problem is pointed out to the Court in having the attorneys' records transferred. Construing the statement of the defendants as to the Army officials as an assertion that they will be called to testify at trial, there is no indication they would not be willing witnesses and, moreover, that they would not be as willing to come to Philadelphia as Wilmington. However, if they were witnesses, the Court recognizes that Wilmington would be more convenient for them.

The only references to occurrence witnesses appear in the Coast Guard report and plaintiff's brief. The Coast Guard report lists only one witness whose address is given as Garden Grove, Calif. The plaintiff in his brief states the principal witness, who is a crewmember, resides in San Francisco and is at sea for most of the year.

Nance of Wilmington, North Carolina. On March 8, 1973, plaintiff was transferred to Veteran's Hospital in Durham, N. C. where he was still hospitalized as of April 17, 1973[5]. In addition, the plaintiff has been an inpatient at the U. S. Public Health Service in Norfolk, Va.[6] and, plaintiff's counsel avers that the plaintiff has expressed an intention to come to Philadelphia, Pa. and to avail himself of the rehabilitative services of the Hospital of the University of Pennsylvania[7].

Finally, the defendant avers that it will be inconvenient for both plaintiff and defendant to try the case in Philadelphia and attempt to gather testimony of various witnesses and treating physicians in North Carolina.

### Discussion

Both parties have provided extensive citations of authority on this motion; however, due to the discretionary nature of a decision in this area, each case must be considered on its own particular facts[8]. Solomon v. Continental American Life Insurance Co., 472 F.2d 1043, 1045 (3 Cir. 1973)

### Convenience of Parties and Witnesses

The defendant has presented no evidence of inconvenience to itself by defending this law suit here apart from the issues of witnesses and the joinder of Ryan Co. as a third party defendant. The mere fact that plaintiff resides in North Carolina is insubstantial. Of course, the plaintiff has expressed an intention to come to Philadelphia for rehabilitative treatment. However, the

only plausible inference on the basis of the present record is that the plaintiff is not in Philadelphia, and, in fact, is home in North Carolina. In addition, there is no information on at what point in time the plaintiff will seek treatment here. Thus, the importance of this factor is diminished for purposes of this decision.

At least two significant issues at trial will be the circumstances surrounding the injury and, importantly, the connection, if any, between that injury and the brain damage that plaintiff has suffered.

The only occurrence witnesses thus far identified have California residences. It is impossible to say which forum would be more convenient for either of them. Moreover, one of them is alleged to be a seaman and it is likely that his testimony could be provided by deposition as is invariably done with seamen. Medich v. American Oil Co., 177 F.Supp. 682 (E.D. Pa.1959).

The connection between plaintiff's initial injury and his subsequent brain damage is likely to be an important and very complex question. A great deal of plaintiff's medical treatment, thus far, has occurred in North Carolina near the District Court for the Eastern District of North Carolina.

The affidavit of defendant is remiss in naming specific doctors and describing the scope of their testimony, notwithstanding a statement by counsel that there has been extensive discovery in North Carolina. However, enough has been presented to strongly suggest that some of these treating physicians will be useful and appropriate at trial. The

---

5. Defendant, in his brief, states that all of these institutions are within the Eastern District of North Carolina and all of plaintiff's treating physicians reside in and around Wilmington where they are subject to the subpoena power of the Eastern District of North Carolina. The defendant states that this is the type of case which requires live witnesses at trial.

6. In his brief, plaintiff's counsel states that this stay was in excess of one month and that the treatment received there was more substantial with respect to both time and impact than any received in North Carolina.

7. In his brief, plaintiff's counsel asserts that the bulk of plaintiff's medical treatment will be rehabilitative treatment at the University of Pennsylvania Hospital.

8. "Interesting similarities to one or more of the facts in the case at hand may be found in the reported decisions. But in the end each case is unique and must be decided on its own circumstances." McFarlin v. Alcoa Steamship Company, 210 F.Supp. 793, 794 (E.D.Pa.1962).

defendant states that these doctors reside in and around Wilmington [9]. Thus, these doctors are clearly outside the reach of compulsory process of this Court while within that of the transferee court. The much greater convenience of the transferee court for them is obvious and the importance of such witnesses to the defendant, plaintiff and/or the Court is likewise obvious.

The plaintiff argues that the medical testimony discussed above can be taken by deposition and the records transferred and that, in fact, even if the action is transferred, ·the doctors may not be subject to subpoena. Although we agree that the location of records is not significant, we cannot say generally that the fact that the testimony of medical witnesses can be taken by deposition means that their location is irrelevant. Cf., Banton v. Kawasaki Kisen K.K., C.A. 71–2665 (E.D.Pa., Jan. 31, 1972). Nor would we make the general statement that it is always preferable to try the case where the records and witnesses are located. Cf., White v. Lykes Brothers Steamship Co., Inc., 333 F. Supp. 836 (E.D.Pa.1971); Long v. Waterman Steamship Corporation, C.A. 35569 (E.D.Pa., September 21, 1964); Hardee v. United States Lines Co., C.A. 39986 (E.D.Pa., August 22, 1966). Such statements are useful as guides to decision but do not have significance independent of an analysis and appraisal of the facts of the particular case.

The relation between plaintiff's initial injury and his later more substantial medical problems appears to be a genuine medical issue. It is true only one treating physician is named and there is no allegation as to deposing or calling as a witness any specifically named doctor. However, it can fairly be said that the statement is made that at least some physicians will be called.

This brings us to plaintiff's argument that the doctors may not be subject to subpoena. In support of this argument, the plaintiff quotes from, Clifton v. American Oil Company, C.A. 37410 (E. D.Pa., January 10, 1966):

"It is of little value that plaintiff was treated mainly in Savannah, at the Public Health Hospital. First, testimony relating to the treatment is usually given in deposition form which will be of equal effect in Philadelphia as in Savannah. Secondly, the doctors employed in such hospitals are not usually subject to subpoena. Biedrzychi v. Alcoa Steamship Co., 191 F.Supp. 895 (E.D.Pa.1961).

It has been said that the doctors of the United States Public Health Service rarely appear in Court to testify and that it is the usual practice of the Surgeon General that the testimony of attending physicians, if given at all, will be given by deposition, regardless of the place of trial. Alleyne v. Nippon Yusen Kaisha, 328 F.Supp. 30, 32 (E.D.Pa. 1971); McFarlin v. Alcoa Steamship Co., 210 F.Supp. 793 (E.D.Pa.1962); Biedrzychi v. Alcoa Steamship Co., *supra.*

This practice as to doctors of the United States Public Health Service may be the result of temporary assignments of doctors or perhaps the satisfactory nature of the treatment records. The plaintiff has not suggested that these doctors are somehow immune from the subpoena power nor that these observations are equally applicable to doctors who are not connected with the United States Public Health Service. None of the institutions that the plaintiff attended in North Carolina are said to be connected with that service.

The plaintiff was also a patient at the United States Public Health Service in Norfolk, Va. for about a month. The plaintiff's counsel has asserted that this treatment was of greater significance than that received in North Carolina. This is a bit conclusory but, at any rate, those doctors and records are beyond

---

9. Both parties have supplemented their sworn statements with statements in their memoranda. These unsworn statements have been noted in the footnotes accompanying the findings in the body of the opinion. We have considered all the information offered by the parties.

the reach of process of both forums and the distance of Norfolk from both forums makes any difference in convenience between the two forums de minimis. Moreover, plaintiff's observations with respect to such doctors appearing in Court applies with full force here.

Finally, plaintiff, in the future, may come to Philadelphia for rehabilitative treatment. This raises the possibility that doctors of that institution and their records will be relevant at the trial especially as regards the rehabilitative progress of the plaintiff. However, as noted previously, there is an open question as to when the plaintiff may come to Philadelphia.

### Interest of Justice

The most important factor in this regard is that absent, a transfer of this action, the defendant will not be able to join as a third party defendant, Ryan Co. Thus, absent a transfer, there may be required a second lawsuit in the Federal Courts arising out of this transaction. This factor is especially pertinent in a motion to transfer since the purpose of 28 U.S.C. § 1404(a) is to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and exposure. The section reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of fairness and justice. Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964).

"[Both] the history and purposes of 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on basis of convenience and fairness, simply to authorize a change of courtrooms". Van Dusen v. Barrack, *supra*, 376 U.S. at 636, 84 S.Ct. at 819, 11 L.Ed.2d at 961.

The plaintiff argues that the desire of the defendant to implead a third party defendant cannot be used to deprive him of his choice of forum. Banton v. Kawasaki Kisen K.K., *supra*.

We do not read *Banton* as broadly as the plaintiff urges. We think that the availability for joinder of a third party defendant is a factor which favors transfer for the convenience of a party but more importantly in the interest of justice. *See*, Koeneke v. Greyhound Lines, *supra*, 289 F.Supp. 487 (D.C.Okl.); Popkin v. Eastern Air Lines, Inc., 253 F. Supp. 244, 248 (E.D.Pa.1966) Brown v. Blidberg Rothchild Co., 222 F.Supp. 18, 19 (D.Del.1963); Allied Petro-Products, Inc. v. Maryland Casualty Co., 201 F.Supp. 694, 695 (E.D.Pa.1961) [10].

### Conclusion

In light of the foregoing, we believe that a transfer of this action is appropriate. We do not consider the record on the medical witnesses solely determinative of the question. However, that factor, plus the need for transfer to allow defendant to join a third party defendant, in light of the other considerations, leads this Court to conclude that a proper balancing of relevant interests makes transfer appropriate, not withstanding plaintiff's choice of forum.

---

10. The plaintiff argues that the two cases most on point with the instant case both denied transfer. Quite apart from the introductory remarks of this memorandum they are distinguishable. Flem A. Clay v. Overseas Carriers Corporation and Maritime Overseas Corporation, (E.D.Pa., October 30, 1972) (order without opinion), (Memorandum opinion, October 10, 1973) did not present the factor of joinder of a third party defendant which is present in this case. There are other differences but this is certainly sufficient. In Banton v. Kawasaki Kisen K.K. (apart from the comments in the body of this opinion), the plaintiff agreed to pay, as a condition for the denial of transfer, the cost of transporting any material witnesses from the Canal Zone and, if necessary, to pay the reasonable expenses incurred by defense counsel in deposing these witnesses in Panama.